COMMONWEALTH *vs.* CHARLES M. CHASE, THIRD.

No. 95-P-1344.

Bristol. February 6, 1997. - May 30, 1997.

Present: WARNER, C.J., JACOBS, & LAURENCE, JJ.

*Felony-Murder Rule. Homicide. Larceny. Practice, Criminal,* Instructions to jury, Assistance of counsel, Preservation of evidence. *Constitutional Law,* Assistance of counsel.

At the trial of an indictment for murder in the second degree on a felony-murder theory with the underlying felony of larceny of a truck and its contents, there was ample evidence that the felony was committed with a conscious disregard of the risk to human life, where the evidence demonstrated that the defendant, as he fled the scene in the truck, had seen a man running toward the truck and had continued to drive toward the man, never slowing down, and had hit him. [751-753]

At the trial of an indictment for murder in the second degree on a theory of felony-murder, there were no errors in the judge's instructions on felony-murder, considering the instructions as a whole, that created a substantial risk of a miscarriage of justice. [753-755]

This court undertook, in the interest of judicial economy, to decide an issue raised by a criminal defendant on a motion to suppress evidence that was not addressed in the trial judge's findings and rulings, in circumstances in which the underlying facts were not in dispute. [755-756]

Where a suspect had not been charged with the offense about which police initiated an interview while the suspect was being held in lieu of bail on an unrelated charge, the suspect's right to counsel had not attached, and he was not entitled, on the ground that his right to counsel had been violated, to suppression of his inculpatory statements made after he had waived his Miranda rights. [756]

In a criminal case, the prosecution's release of a truck that was allegedly used by the defendant to run down and kill the truck's owner, before the defendant had inspected it, was at worst, negligent: where the prosecution's examination of the truck produced no evidence helpful to its case, where the defendant did not show that any missing evidence would have been material to his defense, and where the defendant did not demonstrate that he would suffer any potential prejudice as a result of the unavailability of the evidence, the judge correctly denied the defendant's motion to dismiss the indictments. [758-759]

INDICTMENT found and returned in the Superior Court Department on December 18, 1991.

Pretrial motions to suppress evidence and to dismiss were heard by *George C. Keady, Jr.*, J., and *J. Harold Flannery*, J., respectively, and the case was tried before *Elizabeth J. Dolan*, J.

*James L. Sultan* for the defendant.

*Shaun S. McLean*, Assistant District Attorney, for the Commonwealth.

WARNER, C.J. The defendant was indicted on charges of first degree murder, motor vehicle homicide, larceny of a motor vehicle, and larceny of property of a value of $250 or more. He pleaded guilty to the larceny charges on the first day of trial.[1] A Superior Court jury convicted him of second degree felony-murder and motor vehicle homicide. The court dismissed the motor vehicle homicide indictment as duplicative of the murder conviction.

The defendant contends that his felony-murder conviction should be reversed on the following grounds: (1) felony-murder may not be predicated on the crime of larceny; (2) the jury instructions on felony-murder contained errors; (3) the defendant's motion to suppress custodial statements should have been granted; and (4) the Commonwealth destroyed potentially exculpatory evidence. We affirm the conviction.

*Evidence presented at trial.* We summarize the relevant evidence elicited at trial. On October 22, 1991, the defendant and a Roy Farias went to the Dartmouth Mall in North Dartmouth. There, the defendant broke into Albert Renauld's tool truck, "jimmied" the ignition, and started the engine. According to eyewitnesses, he accelerated quickly, tires squealing. Renauld emerged from the mall and began to run toward the driver's side door of his truck. The defendant drove directly toward Renauld without slowing down. Renauld was struck in the chest and stomach by the door of the truck, thrown into the air, and left lying on the ground. The defendant continued on, driving out of the mall. Renauld died of head injuries the next day.

The defendant was interviewed about the foregoing events on November 7, 1991, at the Dartmouth house of correction. At that time, he was being held in jail on an unrelated mat-

---

[1]The larceny charges pertained to the theft of the victim's truck and of the tools the truck contained.

ter. He was advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and made a written waiver of those rights. A State police officer who interviewed the defendant testified that he gave the following account. He and Farias had driven to the Dartmouth Mall intending to steal a truck. They were looking for tools to steal as well, and chose the victim's truck because it had tool boxes on its side. The defendant broke the truck's window, unlocked the door, entered, broke the ignition off with a claw hammer and pliers, and started the engine. As he began to drive across the parking lot, he saw someone running toward him. He told the police interviewer, "[If] I had a gun I'd have shot him. I wasn't going to stop." As the man kept coming toward him, he yelled "Get the fuck out of the way." The man kept coming and swung a shopping bag at the truck. The defendant hit him with the left front quarter of the truck, and the man rolled backward hitting "what [the defendant] termed the rear view, which [the police interviewer] took to mean the side view mirror of the truck." The defendant then told the police interviewer, "The son of a bitch, if he — He didn't have to stay in front of the truck," and "I just hit the fucking guy. I think he was the owner of the truck." After hitting Renauld, the defendant accelerated and drove around the corner, where he met with his confederate. An acquaintance of the defendant testified that two days after the incident he told her that when the truck's owner came running toward him, he "just gunned it" and ran Renauld down.

Additional facts appear below concerning the defendant's motion to dismiss and his motion to suppress statements he made to the police on November 7, 1991.

1. *Felony-murder predicated on the crime of larceny.* The defendant, relying on the Supreme Judicial Court's decision in *Commonwealth* v. *Matchett,* 386 Mass. 492 (1982), argues that the trial judge impermissibly expanded the existing felony-murder rule by allowing the case to go to the jury on a felony-murder theory predicated on a crime against property. He further argues that if at present the law does not clearly prohibit this application of the felony-murder rule, the law should be clarified or changed to do so.

Prior to *Matchett,* a case of felony-murder required proof only that "the defendant committed a homicide while engaged in the commission of a felony." *Commonwealth* v. *Matchett,*

386 Mass. at 502, citing *Commonwealth* v. *Watkins,* 375 Mass. 472, 486-487 (1978). Noting that the felony-murder rule rests on "the theory that the intent to commit the felony is equivalent to the malice aforethought required for murder," *id.* at 507, the court reasoned in *Matchett* that "[f]or this theory to be tenable the nature of the felony must be such that an intent to commit that crime exhibits a conscious disregard for human life, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty." *Ibid.*, quoting from *Commonwealth* v. *Bowden,* 456 Pa. 278, 287 (1973) (Nix, J., concurring).

The *Matchett* court held that because the underlying felony in that case, extortion, was a crime that could be committed in a manner not inherently dangerous to human life, "when a death results from the perpetration or attempted perpetration of the statutory felony of extortion, there can be no conviction of felony-murder in the second degree unless the jury find that the extortion involved circumstances demonstrating the defendant's conscious disregard of the risk to human life." *Id.* at 508. In the years following, the holding in *Matchett* has been extended to crimes other than extortion. See *Commonwealth* v. *Moran,* 387 Mass. 644, 648-651 (1982) (unarmed robbery); *Commonwealth* v. *Ortiz,* 408 Mass. 463, 466-467 (1990) (unlawful carrying of a firearm in a vehicle), and cases cited.

The defendant, pointing out that no felony-murder conviction in Massachusetts has been predicated on a pure property crime since *Matchett,* incorrectly contends that no post-*Matchett* cases approve the application of the felony-murder rule to "pure property crimes." In *Commonwealth* v. *Fickett,* 403 Mass. 194, 202 (1988), for example, the court stated that "[i]f the evidence at retrial warrants a finding that the defendant was guilty of larceny . . . instructions would be required on both larceny and on felony-murder in the second degree, coupled with the necessary element that the circumstances must show beyond a reasonable doubt the defendant's conscious disregard of the risk to human life." See also *Commonwealth* v. *Walker,* 17 Mass. App. Ct. 194, 196-197 (1983).

The now well established test that a felony must pass before it can be a predicate offense for felony-murder is that "[t]he felony must either (1) be 'inherently dangerous' . . . or (2) if not inherently dangerous, be committed in a manner which

'involved circumstances demonstrating the defendant's conscious disregard of the risk to human life.' " *Commonwealth* v. *Catalina,* 407 Mass. 779, 785 (1990), quoting from *Commonwealth* v. *Matchett,* 386 Mass. at 508. See *Commonwealth* v. *Mello,* 420 Mass. 375, 391 (1995). In the present case, the judge instructed the jury three times that in order to support a conviction of second degree felony-murder, the prosecution must prove beyond a reasonable doubt that the underlying felony was committed with a conscious disregard of the risk to human life.

There was ample evidence from which the jury could have concluded that the defendant's theft of the truck and its contents was committed with a conscious disregard of the risk to human life. The defendant drove off in the stolen truck, tires squealing, saw Renauld running toward him, and continued to drive directly toward Renauld, striking him and throwing him into the air. The fleeing defendant never slowed down. Two days later, he told a friend that when he saw the victim approaching, he accelerated. He also told the police that he had seen a person whom he assumed was the truck's owner coming toward the truck, but that he had no intention of stopping. In view of these facts, the defendant's contention that the danger to human life was not reasonably foreseeable because the predicating felony was larceny lacks any semblance of persuasiveness.

Similarly unpersuasive is the defendant's attempt to analogize the facts of this case to the situation hypothesized in *Matchett,* where the court questioned whether a driver, who, on his way to receive stolen property, kills a pedestrian en route, has committed felony-murder. 386 Mass. at 507. As the court has stated repeatedly, the facts specific to each case must be assessed when applying the felony-murder rule. *Id.* at 504. *Commonwealth* v. *Moran,* 387 Mass. at 650. *Commonwealth* v. *Claudio,* 418 Mass. 103, 108 (1994). In this case, the defendant saw a man running toward the truck he was stealing and continued to drive directly toward him, never slowing down. The danger to human life was evident.

Finally, we decline the defendant's request that we change the law concerning felony-murder. Cf. *Burke* v. *Toothaker,* 1 Mass. App. Ct. 234, 239 (1973).

2. *The instructions on felony-murder.* The defendant contends that the jury charge on felony-murder, to which he

did not object at trial, contained errors which created a substantial risk of a miscarriage of justice. See *Commonwealth v. Amirault*, 424 Mass. 618, 647 n.21 (1997). He points specifically to the judge's failure to instruct that the death must be a natural and probable consequence of the felony and that the felony must be independent of the homicide.[2] He further contends that the judge inadequately defined "conscious disregard for human life." We consider the instructions as a whole. *Commonwealth v. Owens*, 414 Mass. 595, 607 (1993).

The judge properly instructed the jury that the victim's death must have occurred in the course of the felony.[3] She did not instruct that the death must be a "natural and probable consequence" of the felony. See *Commonwealth v. Gordon*, 422 Mass. 816, 851 (1996). However, the judge's initial instruction on murder carefully explained that the victim's death must be a natural and probable consequence of the defendant's act.[4] The judge referred to the initial murder instruction as she instructed the jury on the alternative theory of felony-murder, and repeated the causation requirement.[5] She thus made clear the necessary causative relation between the defendant's act and the victim's death. The defendant's causative act, under the facts of this case, could only have been his reckless flight from the scene of the commission of

[2] The elements of felony-murder are: (1) the defendant participated in a felonious enterprise; (2) a homicide occurred in the course of that enterprise; (3) the felony was inherently dangerous to human life or committed with conscious disregard on the part of the defendant for the risk to human life; (4) the deaths must have been the natural and probable consequence of the felony; and (5) the felony must have been independent of the homicides. *Commonwealth v. Ortiz*, 408 Mass. at 466-467.

[3] It is sufficient to show that the killing occurred as part of the defendant's effort to escape from the crime scene. See *Commonwealth v. Ortiz*, 408 Mass. at 466.

[4] The judge instructed thus: "The Commonwealth must prove beyond a reasonable doubt that the death of Albert Renauld occurred as a proximate cause of the defendant's act. An act which is the proximate cause of death is an act which in the natural and continuous sequence produces the death, and without which the death would not have occurred. So, the Commonwealth must prove that the act of this defendant resulted in the death of Albert Renauld as a natural and continuous sequence producing the death, and without which the death of Albert Renauld would not have occurred."

[5] The judge instructed: "I have told you what the Commonwealth must prove as far as an unlawful killing is concerned . . . that death was a proximate cause of the act of the defendant . . . ."

the felony. Therefore, the omission of the specific instruction would not have affected the jury's verdict.

Similarly, the absence of an instruction that the felony must be independent of the homicide was not material, since there was no issue in this case that the underlying felony merged with or was an element of the homicide. Compare *Commonwealth* v. *Claudio*, 418 Mass. at 105-109. Consequently, even if the omissions were error, which we do not decide, it would not be plausible to infer "that the result might have been otherwise but for the error." See *Commonwealth* v. *Amirault*, 424 Mass. at 650, quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 n.22 (1986).

Lastly, the judge's failure to elaborate on the phrase "conscious disregard for the risk to human life" was perfectly proper. She informed the jury three times that the Commonwealth must prove beyond a reasonable doubt that the defendant committed the felony with a conscious disregard for the risk to human life. No more was required. See *Commonwealth* v. *Tevenal*, 401 Mass. 225, 230-231 (1987); *Commonwealth* v. *Silva*, 25 Mass. App. Ct. 220, 225 (1987), quoting from *Commonwealth* v. *Matchett*, 386 Mass. at 508.

3. *The motion to suppress custodial statements.* On November 5, 1991, the defendant was arrested for armed robbery, a crime unrelated to the present case. The police read the defendant Miranda warnings at the time of his arrest and again at the Easton police station where he was booked. He was arraigned in the Taunton District Court on November 6, 1991, and assigned counsel for purposes of bail only. The case was continued to November 14, 1991, for conference and the appointment of counsel, and the defendant remained in custody. On November 7, 1991, he was transported to the Dartmouth house of correction at the request of the police officer investigating the case at bar. There he made a written waiver of his Miranda rights, and then made the inculpatory statements which were the subject of his suppression motion.

The motion, filed on May 5, 1992, contended that the statements the defendant made on November 7, 1991, should be suppressed because (1) he had not voluntarily waived his Miranda rights, and (2) he had been "denied effective assistance of counsel" when the court ordered him held on $50,000 cash bail in the armed robbery case and postponed appointment of counsel. After a hearing on May 21, 1992, the motion was denied.

The motion judge's findings and rulings addressed the Miranda issue, but not the defendant's claim that he had been denied assistance of counsel in violation of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. On appeal, the defendant raises only the assistance of counsel issue. Both parties agree that none of the underlying facts is in dispute, and ask that we address the issue. We will do so in the interest of judicial economy. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 447-450 (1980).

The defendant asserts that he had a right to the appointment of counsel at his arraignment in the armed robbery case on November 6. Because the appointment of counsel was postponed, he contends, he was deprived of the advice of counsel when he made inculpatory statements to the police on November 7 in the case at bar. This claim fails.

We do not decide whether the defendant's right to counsel in the armed robbery case was violated when the appointment of counsel was postponed. Even if the defendant's Sixth Amendment right to counsel had attached and been invoked with regard to the armed robbery charge, this does not affect police-initiated interrogation regarding a different, unrelated, uncharged offense. *McNeil* v. *Wisconsin,* 501 U.S. 171, 175 (1991). "The Sixth Amendment right . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, ' "at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." ' And just as the right is offense specific, so also its . . . effect of invalidating subsequent waivers in police-initiated interviews is offense specific." *Ibid.* (citations omitted). Because the defendant had not yet been charged in the present case when he made the statements at issue, his Sixth Amendment right to counsel did not bar their admission.[6] The motion to suppress was properly denied.

---

[6]Unlike the Sixth Amendment right to counsel, the United States Constitution's Fifth Amendment Miranda right is not offense specific. "Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present" (emphasis original). *McNeil* v. *Wisconsin,* 501 U.S. at 177, citing *Arizona* v. *Roberson,* 486 U.S. 675 (1988). The defendant

4. *The defendant's motion to dismiss.* The defendant moved to dismiss the indictments on June 8, 1992, contending that the prosecution had intentionally destroyed material, potentially exculpatory evidence by releasing the truck from their custody before he had an opportunity to inspect it.[7] The motion judge held a three-day evidentiary hearing, which included fifteen exhibits and the testimony of fourteen witnesses. His findings are summarized below.

The truck, recovered in Rhode Island several hours after the incident, was examined by Dartmouth police officers at the Tiverton, Rhode Island, police garage. The passenger window and steering column were broken, the ignition was popped, and there was a rust spot on the driver's side of the body. The police found no human hair, skin, blood, or clothing fibers on the outside of the truck. They towed the truck to their garage, and upon further inspection, found no physical evidence indicating where the victim was hit. They inspected the truck's interior for fibers and hairs. They found no fingerprints and recovered no inculpatory evidence. Both the State police and Dartmouth police photographed the truck's exterior.

On January 10, 1992, the parties executed a conference report providing that defense counsel could inspect physical evidence upon twenty-four hour notice to the prosecution. In March, 1992, the Bristol County district attorney's office released the truck from the custodial pool of physical evidence without notifying defense counsel.

In late December, 1991, an insurance adjuster had calculated the truck a "constructive total loss" for the benefit of the victim's family. Dartmouth police Captain Herbert Tondreau wished to purchase the truck. He drafted an undated bill of sale and paid Renauld's family $1,200, but could not recall the date of purchase. Tondreau took possession of the truck upon its release in March, 1992, and had it repaired in late April, 1992. The repairs included sanding and painting the driver's side door and mechanical work.

The defense filed a motion to inspect the truck on May 21, 1992. At that time, the prosecution informed them that it had

---

does not claim to have invoked his Fifth Amendment Miranda right to counsel in the earlier armed robbery case.

[7]Other issues concerning alleged prosecutorial misconduct argued below were not pursued on appeal.

been released from custody in March. On July 10, 1992, the defense inspected the truck at the repair shop to which Captain Tondreau had taken it.

The judge denied the defendant's motion to dismiss. He concluded that no evidence had been deliberately destroyed and that the prosecution's culpability fell "at worst only to the level of negligence." The judge said that the circumstances of the truck's release and sale were unusual, but the fact that the purchaser was a Dartmouth police officer was not significant.

The judge further concluded that the physical evidence lost or destroyed was not material. The prosecution's inspection of the truck produced no evidence useful to its own case. Nor did the defendant show that any missing evidence was material to his theory of defense.

Finally, the judge said, the potential prejudice to the defendant was "insubstantial and uncertain." The defendant had access to the eyewitnesses and to photographs of the front-left portion of the truck. He never showed that the police investigation had produced, but witheld from him, any exculpatory evidence. The judge was "left to imagine what the exculpatory evidence and its significance could be . . . ."

The defendant asserts on appeal that because the prosecution released the victim's truck before he had an opportunity to examine it, his motion to dismiss should have resulted at least in an order precluding the Commonwealth from offering photographs or testimonial evidence of the truck's condition before it was altered. He contends that because the prosecution introduced such evidence at trial, to which he did not object, his conviction should be overturned.[8]

"Whenever potentially exculpatory evidence is lost or destroyed, the judge must weigh (1) the Commonwealth's culpability as to the lost evidence; (2) the materiality of the lost evidence; and (3) the potential prejudice to the defendant as a result of the unavailability of the evidence." *Commonwealth* v. *Otsuki*, 411 Mass. 218, 230-231 (1991). Here, the motion judge conducted an extensive evidentiary hearing and issued findings and rulings before denying the motion.

He found that the prosecution did not release the truck

---

[8]In fact, the defendant never demonstrates how the introduction of this evidence either aided the prosecution or prejudiced his own case.

with the intent of deliberately destroying evidence, and that the Commonwealth's culpability did not fall below the level of negligence. The defendant does not challenge this conclusion. The judge further found that the prosecution's examination of the truck produced no evidence helpful to its case, that the defendant had not shown that any missing evidence would have been material to his defense, and that he had not shown that he had suffered any prejudice by its loss.

The judge applied the proper balancing test. Absent a clear abuse of discretion, we will not disturb his conclusion. *Commonwealth* v. *Perito*, 417 Mass. 674, 684 (1994).[9]

*Judgment affirmed.*

---

[9]The defendant cites the prosecution's violation of the pretrial conference report provision permitting the defense to examine evidence on twenty-four hour notice to support his argument that his conviction should be overturned. In order to obtain relief on these grounds, he would have had to show that he was prejudiced. See *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 229 (1992), and cases cited. He has not made this showing.