Commonwealth *vs*. Robert D. Wade.

Plymouth. May 6, 1998. - August 6, 1998.

Present: Wilkins, C.J., Lynch, Fried, Marshall, & Ireland, JJ.

*Felony-Murder Rule. Practice, Criminal,* Instructions to jury, Duplicative convictions, Capital case. *Homicide. Rape.*

At the trial of an indictment for murder in the first degree on a theory of felony-murder with aggravated rape as the underlying felony, no substantial risk of a miscarriage of justice was created by the judge's omission of an instruction on death as a "natural and probable consequence" of the felonious act, where the judge's instructions otherwise made clear the necessary causative relation between the defendant's act and the victim's death [149-151]; furthermore, the uncontroverted physical evidence was sufficient to support a finding that the homicide was the foreseeable consequence of the felonious act, and there was no substantial likelihood that the jury would have found otherwise if correctly instructed [151-152].

In the circumstances of a first degree murder case, tried on a theory of felony-murder with aggravated rape as the underlying felony, the rape was sufficiently distinct from the assault causing serious bodily harm that resulted in the victim's death, and there was no substantial likelihood that the defendant was erroneously convicted of felony-murder [152-153]; however, the defendant's conviction of aggravated rape was duplicative of the felony-murder conviction and was ordered vacated [155].

At a murder trial, the judge's instructions to the jury on manslaughter and on murder in the first degree and in the second degree on the theory of felony-murder were entirely correct. [153-155]

Indictments found and returned in the Superior Court Department on December 6, 1993.

The cases were tried before *John A. Tierney*, J.

*Ruth Greenberg* (*Lisa S. Belanger* with her) for the defendant.

*Mary E. Mullaney*, Assistant District Attorney, for the Commonwealth.

Marshall, J. The defendant, Robert D. Wade, was convicted of aggravated rape, G. L. c. 265, § 22, and of murder in the first degree on the theory of felony-murder, G. L. c. 265, § 1. The victim was an eighty-three year old woman. On appeal

from his conviction of murder,[1] the defendant argues that there was error in the judge's instructions on felony-murder; the aggravated rape was not sufficiently independent of the assault that culminated in the homicide to warrant a conviction of felony-murder; and the judge's response to a question from the jury erroneously precluded them from considering a manslaughter conviction. We affirm the conviction of murder. The conviction of aggravated rape must be vacated. Although the defendant makes no claim for relief under G. L. c. 278, § 33E, separate from the ascribed errors, we independently have reviewed the record and conclude that there is no reason for us to exercise our power under that statute in favor of the defendant.

1. The jury could have found the following facts. The victim lived with her son on a farm that they owned. The defendant, employed as a farmhand, also lived on the farm in a small building near the main house. Before the assault occurred, the victim was in good health, capable of recognizing people and speaking intelligently with them although she had been diagnosed with Alzheimer's disease the year before.

On October 24, 1993, the victim's son returned to the farm at about 5:30 P.M. After working outside for about two hours, he returned to the main house in which he lived with his mother. The son noticed that the door was unlocked and ajar, which was unusual, and he could not locate his mother. After looking for her unsuccessfully, he went to the building where the defendant lived and, when there was no response to his knocking, opened the door, and turned on a light in the room. The defendant emerged from a bedroom, naked. The son then discovered his mother lying naked on the defendant's bed. She was unable to walk, and there were signs of injury to her body. He telephoned the police and the victim was taken to a hospital. Questioned briefly by a police sergeant, the victim stated that "Bob," "the man out back" was the assailant.

A sexual assault examination performed on the victim was positive; there was evidence that the defendant had perpetrated the act. The victim's clothing had been torn and was covered with human blood. She had suffered bruises to her eyes and to her neck (the latter consistent with choking), her left wrist was fractured and there was evidence that she had suffered a blow to

---

[1]The defendant does not challenge his conviction of aggravated rape. He was sentenced to life imprisonment on the murder conviction. Sentencing on the conviction of aggravated rape was deferred, pending appellate review.

the head. In addition there was evidence that she had been dragged along a dirt road, and her shoulders, knees, and buttocks were badly scraped; gravel was embedded in the torn tissue of her back.

In addition to these injuries, the victim's hip was fractured, and she required hip replacement surgery. The surgery was completed two days after the assault, on October 26. The surgery initially was successful, but on October 29, 1993, she contracted pneumonia, her condition deteriorated, both her lungs became infected and she died on November 13, 1993. There was evidence that her respiratory failure was associated with a pulmonary condition that is the major cause of the high mortality rate for elderly persons who break a hip. The medical examiner testified that the cause of death was "blunt force injuries" and that her death was not the direct result of a natural disease.

2. *The instructions on felony-murder.* The judge instructed the jury that to find the defendant guilty of felony-murder, they were required to find that the defendant assaulted the victim, and that the victim's injuries as a result of the defendant's assault were the proximate cause of her death. He defined proximate cause in part as "a cause which in the natural and continuing sequence of events produces death, and without which, the death would not have occurred."[2] The judge did not instruct that "[t]he homicide must be a natural and probable

---

[2]The judge instructed the jury as follows:

"In order for you to find that the defendant killed [the victim], the prosecution must prove beyond a reasonable doubt that the injuries suffered by [the victim] on or about October 24th, 1993 as a result of an assault and battery, if you find that there was such an assault and battery, were the proximate cause of her death. Proximate cause does not mean the exclusive cause or the sole cause. There may be more than one proximate cause of death. Therefore, if a person unlawfully inflicts upon another person a physical injury which is a proximate cause of the latter's death, such conduct constitutes an unlawful killing even though the injury inflicted was not the only cause of the death. If the prosecution proves beyond a reasonable doubt that the final medical cause of death was a reasonably foreseeable consequence of the injuries suffered by [the victim] on or about October 24th, 1993, then such injuries are the proximate cause of death, although there may have been other contributing causes of the death.

"Proximate cause is a cause which in the natural and continuing sequence of events produces the death, and without which, the death would not have occurred. If a person inflicts injury in such a manner as to put life in jeopardy and death follows as a consequence of this act, it does not alter its nature or

consequence of the felonious act," *Commonwealth* v. *Matchett*, 386 Mass. 492, 505 (1982), citing Model Penal Code § 201.2, Comment 4C (Tent. Draft No. 9 [1959]). See *Commonwealth* v. *Devlin*, 335 Mass. 555, 567 (1957). The defendant does not take issue with the instruction as to proximate cause. But he claims that an instruction on death as a "natural and probable consequence" of the act is required as an element of felony-murder,[3] because that element is distinct from proximate causation. While a defendant's actions may be the proximate cause of death, he says, death nevertheless may remain a *possible* consequence, rather than a *probable* consequence of his actions, and an instruction on proximate cause is not an adequate substitute for this element of felony-murder. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 647 n.21 (1997). Because the defendant did not raise this objection at trial, we review his claim to determine whether there is a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Gunter*, 427 Mass. 259, 270 (1998).

A similar claim was made and rejected in *Commonwealth* v. *Chase*, 42 Mass. App. Ct. 749, 753-754 (1997), where the defendant was convicted of felony-murder in the second degree. In that case, the judge had instructed the jury that the victim's death "must have occurred in the course of the felony," *id.* at 754, explained that the proximate cause of death "is an act which in the natural and continuous sequence produces the death, and without which the death would not have occurred," *id.* at 754 n.4, but did not instruct that the death must be a "natural and probable consequence" of the felony. *Id.* at 754. The Appeals Court concluded that the omission of the specific

diminish its criminality to prove that other causes cooperated in producing the final fatal result. A pre-existing physical condition does not negate a defendant's liability because in a criminal case, the defendant takes the victim as he finds him or her. The fact that a victim may neglect to properly treat a wound or that medical treatment may not have been the best does not relieve a person's responsibility for the infliction of the wound from criminal responsibility if the victim dies as a result of the injury."

[3] "The elements of felony-murder are: (1) the defendant participated in a felonious enterprise; (2) a homicide occurred in the course of that enterprise; (3) the felony was inherently dangerous to human life or committed with conscious disregard on the part of the defendant for the risk to human life; (4) the deaths must have been the natural and probable consequence of the felony; and (5) the felony must have been independent of the homicides." *Commonwealth* v. *Chase*, 42 Mass. App. Ct. 749, 754 n.2 (1997), citing *Commonwealth* v. *Ortiz*, 408 Mass. 463, 466-467 (1990).

instruction did not create a substantial risk of a miscarriage of justice. The judge's instruction in this case was at least as thorough as the instruction in *Chase.* See *id.* at 754 n.4. Here, as there, the judge made clear that the Commonwealth had to prove that the act that was the proximate cause of death was an act that "in the natural and continuing sequence of events produces the death, and without which, the death would not have occurred." Additionally, the instruction in this case also speaks in terms of a "reasonably foreseeable consequence." Because the judge made clear "the necessary causative relation between the defendant's act and the victim's death," *Chase, supra* at 754, there is no substantial likelihood of a miscarriage of justice created by the judge's failure to include the specific phrase "natural and probable consequence."[4]

There is an alternative basis on which we reach the same result. In *Commonwealth* v. *Baez,* 427 Mass. 630, 632-633 (1998), and *Commonwealth* v. *Ortiz,* 408 Mass. 463, 467-469 (1990), we affirmed convictions of felony-murder where, despite the judge's failure to instruct the jury that death must be a "natural and probable" consequence of the felony, the evidence was legally sufficient to support a finding that the homicide was the foreseeable consequence of the felonious act. In this case the evidence established a brutal sexual assault on an eighty-three year old woman, accomplished through the use of force that included dragging her from one building to another, fracturing her wrist and her hip. The uncontroverted physical evidence

---

[4]In response to questions from the jury the judge marked for identification chalks consisting of outline summaries of the elements of murder in the first and second degrees. These were made available to the jury. The chalk of "felony murder in the first degree" listed the elements in outline form as "A. an unlawful killing and B. during the commission or attempted commission of a felony with a maximum sentence of life imprisonment and C. either a. the felony is inherently dangerous to human life or b. the defendant acted with conscious disregard for human life." At trial the defendant objected generally to the use of the chalks; he raised no objection to the content of the summaries, including the summary of the elements of felony-murder in the first degree. The summary did not include as an element that the death must have been the natural and probable consequence of the felony. See *Commonwealth* v. *Chase,* 42 Mass. App. Ct. 749, 754 (1997). This element should be included in cases in which the facts raise an issue in this regard. See *Commonwealth* v. *Nichypor,* 419 Mass. 209, 215 (1994); *Commonwealth* v. *Matchett,* 386 Mass. 492, 505 (1982). Because the judge's instructions made clear the necessary causative relation between the attack on the victim and her death, we conclude on our independent review of the chalk summary that there is no substantial likelihood that the erroneous chalk created a miscarriage of justice.

was "sufficiently persuasive to counter the contention that there is a substantial likelihood that, correctly instructed, 'the jury would not have found that the [homicide was the] natural and probable consequence[] of the felony,' " *Baez, supra* at 633, quoting *Ortiz, supra* at 469. See *Commonwealth* v. *Gordon*, 422 Mass. 816, 851 (1996); *Commonwealth* v. *Nichypor*, 419 Mass. 209, 215 (1994).

3. *Independence of the felony.* The defendant argues that his conviction of felony-murder is unwarranted because the aggravated rape that served as the underlying felony for the murder conviction is not sufficiently distinct from the assault that resulted in the victim's death. We addressed this issue most recently in *Commonwealth* v. *Gunter, supra,* where we explained that the doctrine of merger requires that the underlying felony be separate from the act that resulted in the homicide because, if the felony-murder rule relieves the prosecution of proving malice, the "substitute intent derived from the felony should be clearly distinct from malice and not merely a mental state that is less culpable than malice but is similarly related to or inferred from the act of violence resulting in homicide." *Id.* at 272. See *Commonwealth* v. *Quigley*, 391 Mass. 461, 466 (1984), cert. denied, 471 U.S. 1115 (1985). If the only felony committed on the victim is the assault that results in death, "the distinctions among homicides would be rendered meaningless: all murders in the second degree and manslaughters could be enhanced to murder in the first degree based on the felony-murder theory with assault as the underlying felony." *Gunter, supra.*

The judge instructed the jury that if a rape "is committed during the commission of a kidnapping or results in serious bodily injury to an alleged victim, that is aggravated rape." He then carefully defined serious bodily injury and kidnapping. The jury convicted the defendant of murder in the first degree on the theory of felony-murder predicated on the felony of aggravated rape, but were not required to specify their theory of aggravation. The defendant argues that because there is the possibility that his conviction was premised on the jury's finding that he caused serious bodily injury to the victim in the commission of the rape, and because under the Commonwealth's theory of the case, there was no assault causing serious bodily injury other

than the aggravated rape,[5] the doctrine of merger precludes a conviction of felony-murder.

The defendant misapprehends the doctrine of merger. The violent conduct that was required to prove rape was forcible penetration of the victim by the defendant, as the judge correctly instructed the jury. The conduct required to prove aggravation — kidnapping or serious bodily harm — is not the same conduct; those acts of violence are separate from the violent act of rape. *Quigley, supra* at 466. The element that provides for the enhancement of the crime of rape to a felony punishable by life in prison (kidnapping, or infliction of serious bodily injury), does not negate the intent to commit the rape that is the substitute for the malice requirement of murder, and the intent to commit the rape, not the intent to inflict serious bodily harm, was the substitute for the malice requirement of murder. See *Commonwealth* v. *Scott*, 408 Mass. 811, 821 (1990) (commission of attempted aggravated rape satisfied malice requirement of felony-murder); *Commonwealth* v. *Troy*, 405 Mass. 253, 262 (1989) (effect of felony-murder rule is to substitute intent to commit felony of rape for malice aforethought required for murder). The breaking of the victim's hip was the life-threatening injury inflicted on the victim that did, in fact, proximately cause her death. The intent to commit the rape is clearly distinct from that assault. There is no substantial likelihood that the defendant was erroneously convicted of felony-murder.

4. *Preclusion of manslaughter verdict.* The judge instructed the jury on murder in the first degree on the theory of felony-murder, and murder in the second degree on the theory of felony-murder. The judge also instructed the jury on manslaughter. During their deliberations the jury asked the following three questions at the same time: "What are the conditions necessary for first degree murder . . . What are the conditions necessary for second degree murder . . . and . . . could you have aggravated rape and second degree murder or manslaughter." In response, to the first two questions the judge marked for identification certain chalks that were outline summaries of the elements of murder in the first degree and murder in the second degree. He also gave additional instructions as to those two questions. The defendant does not challenge these aspects of his

---

[5]Aggravated rape is punishable by life imprisonment and can serve as a basis for felony-murder in the first degree. G. L. c. 265, § 22 (*a*).

instructions. But see note 4, *supra*. As to the third question, the judge instructed the jury that, if they were to find both an aggravated rape and a homicide, the homicide could not be manslaughter, but the jury could find the defendant guilty of murder in the second degree.[6] The defendant argues that this instruction relieved the Commonwealth of its burden of proving that the homicide was committed during the commission of the felony: the evidence permitted, but the judge's instruction effectively precluded, he says, a finding that the injury that led to the victim's death, her broken hip, occurred separately from, either before or after, the aggravated rape.

The judge's instruction was entirely correct. His instruction was based on the legal principle discussed above: the effect of the felony-murder rule is to substitute "the intent to commit the underlying felony for the malice aforethought required for murder." *Gunter, supra* at 271, quoting *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982). " 'Malice' is the element that distinguishes murder from manslaughter." *Commonwealth* v. *Woodward*, 427 Mass. 659, 669 n.14 (1998), citing *Commonwealth* v. *Skinner*, 408 Mass. 88, 93 (1990), and proof of malice would preclude a finding of manslaughter. Where intent to rape was the substitute for malice, proof of rape precludes a finding of manslaughter. It was, however, appropriate for the judge to instruct the jury on manslaughter because the jury could have found the defendant not guilty of aggravated rape. In these circumstances, the jury could, but need not, have found the defendant guilty of manslaughter.

On an alternative ground, we reject the defendant's argument for it rests on an interpretation of the facts that is not supported by the record. There is no evidence to suggest that the victim's hip was broken by the defendant at a time separate from the sequence of events that constituted the commission of the aggravated rape. The evidence showed a continuous attack on the victim: the attack began in the victim's house, she was dragged up the road to his abode, her wrist and her hip were broken, she

---

[6]The judge instructed as follows:

"To answer your third question, could you have aggravated rape and second degree murder or manslaughter, you could not have aggravated rape and manslaughter, but you could have aggravated rape and second degree murder, not under this theory of second degree murder, but under the felony murder rule, because in all cases, if you find the Defendant guilty under the felony murder rule in the first degree, you still have an option. It's up to the jury to find whether that's first degree murder or second degree murder."

was raped, and discovered naked in his bedroom. We are not persuaded by the defendant's argument that, if the merger doctrine does not apply in this case, the jury should have been allowed to consider whether the injury that caused the victim's death — breaking her hip — could have occurred independently of the felony. An act that results in a victim's death may be committed during the commission of the felony, and may also be "independent" of that felony. See *Gunter, supra* at 274-275.

5. *Duplicative convictions.* The defendant has not challenged as duplicative his conviction of aggravated rape, which was the only felony that served to support the conviction of murder. We have held that "once it is established that a felony is sufficiently independent to substitute legitimately for the malice element normally required for murder in the first degree, proof of that independent felony becomes essential for a conviction of felony-murder. When a murder conviction is based on a felony-murder theory, the underlying felony, whatever it may be, is always a lesser included offense and the conviction for that felony, in addition to the conviction of murder, is duplicative." *Gunter, supra* at 276. We, therefore, vacate the conviction of aggravated rape.

6. *Review pursuant to G. L. c. 278, § 33E.* We have reviewed the record pursuant to our statutory obligation under G. L. c. 278, § 33E, and we affirm the defendant's conviction of murder in the first degree. The evidence against the defendant of this brutal attack on a vulnerable, older woman was overwhelming.

The case is remanded to the Superior Court. The judgment on the aggravated rape is to be vacated, and the judgment on the conviction of murder in the first degree is affirmed.

*So ordered.*