COMMONWEALTH *vs.* CHARLES M. CHASE.

Bristol. December 8, 2000. - January 29, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Practice, Criminal,* New trial, Instructions to jury, Assistance of counsel. *Motor Vehicle,* Homicide. *Homicide. Wanton or Reckless Conduct. Waiver. Constitutional Law,* Assistance of counsel.

A criminal defendant waived his claim that he was entitled to an involuntary manslaughter instruction notwithstanding his trial counsel's request to forgo it, raised in a motion for a new trial, where the claim was not, but could have been, presented on direct appeal from his conviction of murder in the second degree. [297-299]

At the trial of an indictment for murder in the first degree in which the defendant was convicted of second degree murder, the judge should have instructed the jury on involuntary manslaughter where the evidence warranted such instruction; however, no substantial risk of a miscarriage of justice arose from the lack of the instruction, where the Commonwealth's murder case against the defendant was especially strong [299-300], and where the jury also convicted the defendant of motor vehicle homicide, which was, in the circumstances, virtually indistinguishable from involuntary manslaughter [300-301].

At the trial of a murder indictment, trial counsel's request that the judge not give an instruction on involuntary manslaughter was not shown to be ineffective assistance of counsel, where counsel made a reasonable tactical decision to attempt to persuade the jury to forgo conviction of the murder charge and any lesser included offense in favor of a conviction of motor vehicle homicide; moreover, the issue was waived where the defendant had not raised it on his direct appeal. [301-302]

Nothing on the record of a murder trial demonstrated a substantial risk of a miscarriage of justice as would warrant the grant of the defendant's motion for a new trial. [302-304]

INDICTMENT found and returned in the Superior Court Department on December 18, 1991.

Following review by the Appeals Court, 42 Mass. App. Ct. 749 (1997), a motion for a new trial, filed on August 17, 1998, was heard by *Elizabeth J. Dolan,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*David J. Nathanson* for the defendant.

*David Keighley*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant was indicted on charges of murder in the first degree, G. L. c. 265, § 1; motor vehicle homicide, G. L. c. 90, § 24G; larceny of a motor vehicle, G. L. c. 266, § 28; and larceny of property with a value of more than $250, G. L. c. 266, § 30. Prior to trial, the defendant entered guilty pleas to the larceny charges.[1] A jury in the Superior Court convicted him of murder in the second degree on a theory of felony-murder (with larceny of a motor vehicle as the underlying felony) and motor vehicle homicide. After sentencing the defendant on the murder and larceny convictions, the judge ordered the motor vehicle homicide indictment dismissed as duplicative of the murder conviction. See *Commonwealth* v. *Jones*, 382 Mass. 387, 392-393 (1981). The defendant's conviction of murder in the second degree was affirmed on direct appeal by the Appeals Court. *Commonwealth* v. *Chase*, 42 Mass. App. Ct. 749 (1997).

The defendant filed a pro se motion for a new trial on the ground that his trial counsel had furnished him with ineffective assistance of counsel when counsel objected to the prosecutor's request that the jury be instructed on involuntary manslaughter as a lesser included offense of the charge of murder in the first degree. In a supplemental brief, filed after our decision in *Commonwealth* v. *Woodward*, 427 Mass. 659 (1998), the defendant also raised, for the first time, claims that the judge committed reversible error by failing to accede to the Commonwealth's request to instruct the jury on involuntary manslaughter, and by doing so without first conducting a colloquy with the defendant to ascertain whether he had waived his right to the instruction. The judge did not consider the latter claims, but denied the motion on the original ineffective assistance claim, without an evidentiary hearing. She concluded in her memorandum of decision that: "It is clear that defense counsel made a strategic decision in objecting to [an instruction to the jury on] the lesser included charge of [involuntary] manslaughter where there existed in this case, an additional indictment charging motor vehicle homicide. The charge of motor vehicle homicide is not a lesser included offense of murder but it clearly gave the jury

---

[1] The larceny charges pertained to the theft of the victim's truck and his tools.

the option of considering a much less serious offense borne out of the evidence presented at trial."[2] The defendant appealed from the order denying the motion, and he was assigned counsel to brief and argue the appeal. We granted his application for direct appellate review to consider the defendant's arguments that (1) the judge erred by not instructing, despite his defense counsel's objection, on involuntary manslaughter; (2) his trial counsel provided him with ineffective assistance of counsel by objecting to the prosecutor's request for the instruction without the defendant's consent; and (3) the judge erred by not independently engaging the defendant in a colloquy to determine whether he had voluntarily and intelligently waived his right to the instruction. We affirm the order denying the motion for a new trial.

1. The threshold issue is whether the defendant's failure on direct appeal to raise the issues he now raises constitutes a waiver. The defendant was represented on that appeal by new counsel, not trial counsel. A determination of the waiver issue establishes the legal standard under which we assess the defendant's present claims. We shall first summarize the evidence at trial and the events concerning the omitted instruction on involuntary manslaughter. Then, we shall proceed to decide the waiver issue and the merits.

(a) On October 22, 1991, the defendant and a companion, Roy Farias, travelled to a shopping mall in Dartmouth. There, the defendant broke into Albert Renauld's truck, broke the ignition, and started the engine. According to eyewitnesses, he accelerated quickly with the tires squealing. Renauld emerged from the mall, and began to run toward the driver's side door of his truck. The defendant drove directly toward Renauld without slowing down. Renauld was struck in the chest and stomach by the door of the truck, thrown into the air, and left lying on the ground. The defendant did not stop, and the truck sped out of the mall. Renauld died of head injuries the next day.

The defendant was questioned by a State trooper and an of-

---

[2]Although the judge considered the. defendant's claim under the constitutional standard for ineffective assistance of counsel, see *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), her discretionary power to give relief on this issue, raised for the first time postappeal, was limited to circumstances where it appeared that a miscarriage of justice might otherwise result. See *Commonwealth* v. *LeFave*, 430 Mass. 169, 173 (1999); *Commonwealth* v. *Curtis*, 417 Mass. 619, 626 (1994).

ficer with the Dartmouth police department on November 7, 1991, while he was being held in the Dartmouth house of correction on an unrelated matter. The defendant admitted that he and Farias had driven to the mall intending to steal a truck. They were looking for tools to steal as well, and chose the victim's truck because it had tool boxes on its side. The defendant broke the truck's window, unlocked the door, entered, broke the ignition off with a claw hammer and pliers, and started the engine. As he began to drive across the parking lot, he saw someone running toward him. He told the police officer, "I had a gun. I'd have shot him. I wasn't going to stop." As the man kept coming toward him, he yelled, "Get the fuck out of the way." The man kept coming and swung a shopping bag at the truck. The defendant hit him with the left front quarter of the truck, and the man rolled backward hitting "what [the defendant] termed the rear view, [which the police interviewer] took to mean the side view mirror of the truck." The defendant then told the police, "The son of a bitch . . . [h]e didn't have to stay in front of the truck," and "I just hit the fucking guy. I think he was the owner of the truck." After hitting the victim, the defendant accelerated and drove around the corner, where he met with Farias. An acquaintance of the defendant testified that, two days after the incident, he told her that when the truck's owner came running toward him, he "just gunned it" and ran the victim down. The defendant did not testify at trial.

With respect to evidence of involuntary manslaughter, we describe an alternate hypothesis, which a reasonable juror could have found to be true, although the hypothesis was not argued to the jury. The defendant was in the process of stealing a truck when Renauld ran up to the truck in an attempt to stop the theft of his vehicle. The defendant yelled, "Get the fuck out of the way," and began to drive away, at all times remaining in the right hand side of the road. The driver's side view mirror of the truck struck the victim when he ran into the middle of the road, and the victim was killed by the resulting fall. The defendant later told the police that "he wasn't going that fast and didn't know that he hit him that hard." No skid marks were found anywhere along the road where the collision occurred.

At the close of the evidence, the Commonwealth requested an involuntary manslaughter instruction, and the judge agreed that the evidence warranted the instruction. After the defendant's trial counsel objected to the instruction, however, the judge

ruled that she would defer to defense counsel's strategic decision that the instruction not be given.

(b) The defendant waived the issues he now raises by not presenting them in his direct appeal. A defendant generally may not raise any ground in a motion for a new trial that could have been, but was not, raised at trial or on direct appeal. *Commonwealth* v. *Pisa*, 384 Mass. 362, 366 (1981), and cases cited. This requirement ensures the finality of convictions by eliminating piecemeal litigation, which would "unfairly consume public resources without any corresponding benefit to the administration of justice." *Id.* It is neither unreasonable nor unduly burdensome to require a defendant to advance his contentions, even those with constitutional ramifications, at the first opportune time. *Murch* v. *Mottram*, 409 U.S. 41, 45 (1972). "We cannot retry every criminal [case] on the basis of what might have been." *Commonwealth* v. *Stout*, 356 Mass. 237, 243 (1969). Thus, even when a claim is one of constitutional dimension, a defendant who has had a fair opportunity to raise it may not "belatedly invoke that right to reopen a proceeding that has already run its course."[3] *Commonwealth* v. *Amirault*, 424 Mass. 618, 639 (1997).

The defendant argues that he did not waive his claim that he was entitled to an involuntary manslaughter instruction, because it was not until our decision in *Commonwealth* v. *Woodward*, 427 Mass. 659 (1998), a year after the Appeals Court affirmed his murder conviction, that we definitively held that, on request by the Commonwealth, a judge must instruct the jury on a lesser included offense that is warranted by the evidence, despite a defendant's objection to the instruction. See *id.* at 662-663. We disagree.

A defendant cannot be held to have waived a claim, constitutional or otherwise, that had no legal support at the time of his trial and appeal. *DeJoinville* v. *Commonwealth*, 381 Mass.

---

[3]We reject the defendant's argument that his ineffective assistance of counsel claim was not waived, because "it was not possible to ascertain from the record whether or not the defendant concurred in his [defense counsel]'s choice [to object to the involuntary manslaughter instruction]." We have said, as a general proposition, that ineffective representation claims are more appropriate to a motion for a new trial rather than to a direct appeal. See *Commonwealth* v. *Allen*, 430 Mass. 252, 257 n.4 (1999). This preference, which affords the defendant's trial counsel an opportunity to testify as to the circumstances of decisions made at trial and allows the defendant the benefit of an amplified factual record, has no bearing on the waiver issue.

246, 248 (1980) (waiver not applicable to constitutional [or nonconstitutional] claim not sufficiently developed to afford defendant "genuine opportunity to raise his claim"). The doctrine of waiver, however, is not so narrow as to require a decision that is squarely on point before a claim is deemed sufficient. *Commonwealth* v. *Amirault, supra* at 643-644. The test is whether "the theory on which [a defendant's] argument is premised has been sufficiently developed [at the time of the defendant's trial and prior appeal or appeals] to put him on notice that the issue is a live issue." *Id.* at 639, quoting *Commonwealth* v. *Bowler*, 407 Mass. 304, 307 (1990). See *DeJoinville* v. *Commonwealth, supra* at 251.

The principles expressed in the *Woodward* decision were far from novel at the time of the defendant's direct appeal. See *Commonwealth* v. *Woodward, supra* at 662-663, and cases cited; *Commonwealth* v. *Martinez*, 393 Mass. 612, 613 (1985) ("It is well established that if, in a murder prosecution, the jury would be warranted in finding the defendant guilty of manslaughter, rather than murder, it is reversible error not to give an instruction on manslaughter"). See also *Commonwealth* v. *Berry*, 431 Mass. 326, 337 (2000) (reaffirming the rule stated in the *Woodward* decision as one of long standing). The defendant's appellate counsel had sufficient notice that a strategic choice on the part of the defendant's trial counsel to forgo the involuntary manslaughter instruction was irrelevant to the judge's duty so to instruct, if the evidence warranted the instruction. See *Commonwealth* v. *Jackson*, 419 Mass. 716, 725 n.8 (1995); *Commonwealth* v. *Thayer*, 418 Mass. 130, 133 (1994), quoting *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 660 (1989) ("test to determine if an instruction on a lesser included offense is required does not depend on whether there is an objection by the defendant or the Commonwealth but rather whether the evidence supports the giving of such instruction"); *Commonwealth* v. *Matos*, 36 Mass. App. Ct. 958, 962 (1994) ("contention that a defendant has an absolute right to make tactical decisions that determine which theories of criminal liability are submitted to the jury is erroneous"); *Commonwealth* v. *Pizzotti*, 27 Mass. App. Ct. 376, 385 (1989) ("A judge need not fall in with a defendant's desire to gamble on the jury's acquitting him of the larger crime if that crime were put to them without the other choice"). In light of these decisions, which were decided prior to the defendant's direct appeal, it would not

have required clairvoyance on the part of his appellate counsel to raise the claim that the judge erred in not instructing the jury on involuntary manslaughter,[4] and by not raising the issue on direct appeal, the defendant waived it. The same result holds true with respect to the defendant's claim that his trial counsel furnished ineffective assistance by objecting to the instruction.

2. The judge should have given an involuntary manslaughter instruction. Because the defendant has waived his claims, we examine to see whether he has met his burden of showing that there was a substantial risk of a miscarriage of justice caused by the lack of the instruction. See *Commonwealth* v. *Amirault, supra* at 637-640.

"This court's traditional treatment of the substantial risk issue calls for us to decide if we have a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). In making that determination, we review the evidence and the case as a whole, considering the strength of the Commonwealth's case, as well as the nature and significance of the alleged errors. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). A new trial will be ordered only in the extraordinary situation where, after such a review, we are left with uncertainty that the defendant's guilt has been fairly adjudicated. *Commonwealth* v. *Amirault, supra* at 647. We now apply that standard to this case.

Here, the Commonwealth's case against the defendant was especially strong. An eyewitness testified that the defendant drove off in the stolen truck, tires squealing, and, when Renauld ran toward the truck, the defendant continued to drive directly toward Renauld. After striking Renauld with such force that he was thrown into the air, the defendant sped away, without slowing down. The defendant himself made incriminating statements. Two days after the crime, he told a friend that, when he saw

---

[4]We reach this conclusion notwithstanding language in two decisions, *Commonwealth* v. *Roberts*, 407 Mass. 731, 737 (1990) (judge commits no error by respecting defendant's strategy to submit "all-or-nothing choice" to the jury), and *Commonwealth* v. *Pagan*, 35 Mass. App. Ct. 788, 791-792 (1994) ("no duty to undercut [defendant's all-or-nothing] strategy"), which, the defendant now claims, misled him as to the state of the law on this issue. The two cases are distinguishable, because in neither case did the Commonwealth request a lesser included instruction. See *Commonwealth* v. *Roberts, supra* at 737; *Commonwealth* v. *Pagan, supra* at 792. See also *Commonwealth* v. *Woodward*, 427 Mass. 659, 663 & n.7 (1998).

Renauld approaching, he "gunned" the truck's engine. The defendant also told a State trooper that he had no intention of stopping for Renauld, and that he would have shot Renauld rather than stop. The jury were well warranted in finding that the defendant's conduct displayed a conscious disregard for human life, a necessary predicate to his conviction of felony-murder in the second degree.[5] See *Commonwealth* v. *Chase*, 42 Mass. App. Ct. 749, 753 (1997).

(a) The error itself, failure to instruct on involuntary manslaughter, was of little significance because the jury had another comparable option — the motor vehicle homicide charge — that was a lesser charge than the murder indictment. This is not a case where the failure to instruct on a lesser included offense left the jury with no alternative between a murder conviction and an acquittal.

Here, the motor vehicle homicide charge was virtually identical to involuntary manslaughter. Motor vehicle homicide is a species of legislatively created manslaughter, see 2 C. Torcia, Wharton's Criminal Law § 170 (15th ed. 1994), and the "reckless" element of the charge is virtually indistinguishable from the "reckless" element of involuntary manslaughter. *Commonwealth* v. *Jones*, 382 Mass. 387, 391 (1981). To convict a defendant of motor vehicle homicide (where, as here, there is no evidence that the defendant was under the influence of an intoxicating substance), a jury must find that a defendant operated a motor vehicle either recklessly or negligently. G. L. c. 90, § 24G (*b*). The judge instructed on negligence, but there is no reasonable view of the evidence that would warrant a negligence finding, and no likelihood that the jury found the defendant merely to be negligent, in view of the fact that they must have found he acted with a conscious disregard for human life to convict him of felony-murder. The defendant, then, was not in a situation in which he was exposed to the risk that the jury would convict him of an offense not fully established by the

---

[5]Because larceny of a motor vehicle, which was the underlying felony to the defendant's felony-murder conviction, does not constitute an inherently dangerous felony, the judge properly instructed the jury that, in order to convict of felony-murder in the second degree, they needed to consider whether the Commonwealth had proved, beyond a reasonable doubt, that the defendant's behavior displayed a conscious disregard for human life. *Commonwealth* v. *Chase*, 42 Mass. App. Ct. 749, 752-753 (1997). See *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982).

evidence, in order to avoid acquitting him entirely.[6] See *Commonwealth* v. *Woodward, supra* at 664-665.[7]

The defendant asserts that the omission of the manslaughter instruction was significant, nonetheless, because the jury, if given the option, could have found he had acted wantonly, but not recklessly, and so convicted him of felony-murder in the second degree, in order to express (what the defendant apparently believes is) a more serious finding of culpability. We disagree.

The standard of "wanton or reckless" (sometimes referred to as "wanton and reckless") behavior is one standard, not two, and describes intentional conduct where there is a "high degree of likelihood that substantial harm will result to another." *Commonwealth* v. *Cruz*, 430 Mass. 182, 186 (1999), quoting *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990). *Commonwealth* v. *Sneed*, 413 Mass. 387, 394 (1992). *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). The jury were instructed in substantially these terms. The defendant would have gained no real benefit had the word "wanton" been inserted into the instructions by way of an instruction on involuntary manslaughter. By convicting the defendant of motor vehicle homicide, the jury, in substance, found that the defendant's conduct was reckless in almost the same sense as that term is used in *Welansky*-type involuntary manslaughter.

(b) The defendant's argument, that his trial counsel furnished constitutionally deficient representation by objecting to the instruction, is largely governed by what has been said about the judge's error in not charging on manslaughter. In the interest of completeness, however, we point out that the defendant's counsel acted reasonably.[8] Trial counsel undoubtedly knew that, by resisting any instruction on manslaughter, he was not committing the defendant's fate to an "all-or-nothing" strategy.

---

[6]It makes no difference, in these circumstances, that motor vehicle homicide was an independent charge and involuntary manslaughter may have been a lesser included offense.

[7]The fact that the defendant, on the last day of trial, expressed his willingness to plead guilty to a lesser charge in no way heightens the seriousness of the judge's error in not allowing the jury to consider involuntary manslaughter. The Commonwealth did not accede to the defendant's offer.

[8]We consider only the ineffective assistance of counsel claim that was raised in the defendant's motion for a new trial, and argued in his appeal from the judge's denial of that motion. That the defendant was proceeding pro se when he filed his motion for a new trial has no relevance to this decision. See

Counsel was faced with a distinct risk that the jury might find murder in the first degree based on the defendant's callous admissions tending to show that he acted with deliberate intent and with malice. Counsel hoped that he could persuade the jury to forgo conviction of the murder charge in exchange for a motor vehicle homicide conviction.[9] The defendant had received an instruction from the judge, that he was not clearly entitled to on the evidence, that negligence could justify a finding of motor vehicle homicide. It certainly was reasonable that, as between "murder," which bespeaks grave culpability, and motor vehicle homicide, which bespeaks lesser (but nonetheless serious) moral fault, the jury might choose the latter and reject the former. Trial counsel's strategy avoided the possible confusion of the jury that could result by inserting into their deliberations yet another offense that closely tracked a charge that was already before them. Counsel may have appreciated, as well, that the fine, and (from the average juror's point of view) difficult to understand, distinction between the definition of reckless conduct and the definition of third prong malice might have adversely influenced the jury to find murder. Counsel endeavored, in the face of a very strong Commonwealth case, to try to mitigate the defendant's responsibility by convincing the jury that the defendant should not be convicted for a fortuitous result caused by conduct that, as counsel in effect argued, was spontaneous and did not create a perceptible risk of death.[10]

(c) We briefly discuss the defendant's remaining points.

*Mains* v. *Commonwealth, ante* 30, 35-36 (2000); *Commonwealth* v. *Jackson,* 419 Mass. 716, 719 (1995).

[9]Any reasonable lawyer would have realized, of course, that a not guilty verdict on the killing was virtually out of the question. The defendant's trial counsel, however, did not give up on the point. In his closing argument, trial counsel urged the jury to acquit the defendant because there was no evidence of deliberate premeditation or malice, and no evidence of felony-murder or reckless or negligent conduct. Counsel styled the incident as an accident, which occurred when the mirror on the truck struck Renauld.

[10]The defendant's reliance on *Commonwealth* v. *Gilliard,* 46 Mass. App. Ct. 348 (1999), is misplaced. There the defendant, whose conviction of murder in the second degree had been affirmed on appeal (*Commonwealth* v. *Gilliard,* 36 Mass. App. Ct. 183 [1994]), was granted a new trial by a judge in the Superior Court on the ground that her trial counsel had been ineffective in failing to request an instruction on the lesser included offense of assault and battery. *Commonwealth* v. *Gilliard, supra* at 348-349. In the first place, the defendant's trial counsel was affiliated with her appellate counsel, and, thus, her ineffective assistance of counsel claim was not waived. *Id.* at 350 n.3. Further, the *Gilliard* jury were presented with an "all or none" choice, and so trial

The defendant asserts that, because he was already serving a sentence of from fifteen to twenty years on an unrelated conviction of assault with intent to commit murder, which apparently was to run concurrently with any sentence imposed on the theft of Renauld's truck, a conviction of involuntary manslaughter, carrying a maximum penalty of twenty years, would not have exposed him to additional incarceration. This argument is speculative, and does not take into account what might have occurred as to sentencing, if there had been a manslaughter conviction. More directly, the contention fails because the defendant's trial counsel acted competently in pursuing the trial strategy described. See *Commonwealth* v. *Coonan*, 428 Mass. 823, 827 (1999).

There is nothing concrete in the record that shows that the defendant was unaware of, or did not agree with, his trial counsel's strategy. In his affidavit, the defendant's trial counsel states only that, "I would hope that such a decision would be discussed by me with any client but I cannot say for a fact that such discussion occurred." The defendant's "affidavit," which is in the nature of a legal argument without meaningful assertions of fact, contains no direct statement asserting that his trial counsel did not discuss the matter with him. We decline to draw what the defendant refers to as a "logical inference," that his trial counsel did not confer with him regarding the strategic choice.

The defendant's final claim, that he was entitled to a colloquy before the judge deferred to his trial counsel's objection to the involuntary manslaughter instruction, has no merit. We have never required a colloquy in such circumstances and do not do so now. The problem, however, is academic. As has been discussed, a judge, on the Commonwealth's request, is not free to omit a manslaughter instruction (or an instruction on any other lesser included offense warranted by the evidence), regardless of the defendant's wishes. *Commonwealth* v. *Woodward*, *supra* at 662. For the reasons explained, we conclude that the defendant's guilt was fairly adjudicated, and, consequently, he has not shown that the matters he complains of created a

counsel's failure to consider requesting the instruction was a "serious fault" that, the Appeals Court concluded, could have harmed the defendant. See *id.* at 351-352 (finding no abuse of discretion in the motion judge's order for new trial). See also *Commonwealth* v. *Woodward, supra* at 664-665. The circumstances present in the *Gilliard* matter, therefore, are not before us.

substantial risk of a miscarriage of justice. See note 2, *supra*; *Commonwealth* v. *Curtis*, 417 Mass. 619, 628 (1994).

3. The order denying the defendant's motion for a new trial is affirmed.

*So ordered.*