COMMONWEALTH *vs.* ROBERT D. WADE.

Plymouth. November 4, 2013. - March 14, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Deoxyribonucleic Acid. Statute,* Construction. *Evidence,* Presumptions and burden of proof, Exculpatory, Scientific test, Expert opinion. *Practice, Criminal,* Presumptions and burden of proof, Affidavit, Assistance of counsel, Capital case. *Homicide. Felony-Murder Rule. Rape.*

Discussion of the standard of review applicable to the determination whether a motion pursuant to G. L. c. 278A, § 3, for deoxyribonucleic acid testing meets the threshold requirements of that statute such that the moving party is entitled to proceed to a hearing. [501-506]

A Superior Court judge erred in denying, without a hearing, a motion, filed by a criminal defendant who had been tried and convicted of murder in the first degree on a theory of felony-murder based on a predicate felony of aggravated rape, for deoxyribonucleic acid testing pursuant to G. L. c. 278A, § 3, of the physical evidence that had been used to support the expert opinion evidence introduced at trial, where the defendant provided sufficient information to demonstrate that the requested testing could be material to the question of who committed the rape [506-509] and that a reasonably effective attorney would have sought such testing [509-512]; and where accompanying the motion were an affidavit in which the defendant averred that he was innocent of the crime of which he had been convicted and an affidavit from a forensic expert asserting that the requested testing would support this claim [512-515].

INDICTMENT found and returned in the Superior Court Department on December 6, 1993.

Following review by this court, 428 Mass. 147 (1998), a motion for deoxyribonucleic acid testing, filed on March 26, 2012, was considered by *Raymond P. Veary, Jr.,* J., and a renewed motion for such testing, filed on October 15, 2012, was considered by *Joseph M. Walker, III,* J.

A request for leave to appeal was allowed by *Lenk,* J., in the Supreme Judicial Court for the county of Suffolk.

*Janet Hetherwick Pumphrey* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

*William M. Taylor,* for The Innocence Network, amicus curiae, submitted a brief.

DUFFLY, J. On September 8, 1997, a Superior Court jury convicted Robert D. Wade of murder in the first degree on a theory of felony-murder and aggravated rape. On direct appeal, the conviction of murder was affirmed and the conviction of aggravated rape was vacated as duplicative. See *Commonwealth v. Wade,* 428 Mass. 147, 155 (1998). Since at least December, 2002, Wade has sought unsuccessfully to obtain deoxyribonucleic acid (DNA) testing of the physical evidence that was used to support the expert opinion evidence introduced at trial.[1] In 2012, the Legislature enacted G. L. c. 278A, "An Act providing access to forensic and scientific analysis" (act). See St. 2012, c. 38. The enactment, which occurred in the wake of national recognition that "DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty," *District Attorney's Office for the Third Judicial Dist.* v. *Osborne,* 557 U.S. 52, 55 (2009), permits access to forensic and scientific evidence on the filing of a motion by an individual who has been convicted of a criminal offense, who consequently has been incarcerated, and who asserts factual innocence. See G. L. c. 278A, § 2.

On March 26, 2012, Wade filed a motion and affidavit pursuant to G. L. c. 278A, § 3 (§ 3 motion). The motion asserts that he is factually innocent of the crimes of murder and rape. The motion states further that the evidence he seeks to have analyzed has not been subjected to DNA testing because his trial counsel failed to request it; serological evidence presented at trial established that a third party contributed to seminal fluid found in the victim's vagina and on her clothes; and DNA testing could establish the identity of that third party and "may wholly exonerate" the defendant. The motion was denied without prejudice by a judge of the Superior Court who concluded that "the DNA testing sought by [Wade] does not appear to have the potential to produce material evidence." A second Superior Court judge denied Wade's renewed motion, with a reference to the first denial, and also denied Wade's motion for reconsideration of that denial.

---

[1] We acknowledge the amicus brief of The Innocence Network.

Wade's appeal from the denial of his motion for DNA testing raises issues of first impression regarding the interpretation of G. L. c. 278A. We are called upon to consider whether the motion meets the threshold requirements of G. L. c. 278A, § 3, such that Wade would be entitled to a hearing on his request for DNA testing. We conclude that the motion judge applied an incorrect standard in denying Wade's motion for DNA testing, and that the motion meets the requirements of G. L. c. 278A, § 3. Accordingly, the order denying the motion must be reversed and the matter remanded for an evidentiary hearing pursuant to G. L. c. 278A, § 7.

*Background and prior proceedings.* We rely on the statement of facts set forth in *Commonwealth* v. *Wade, supra,* and in the memorandum of decision denying Wade's § 3 motion, reserving some facts for later discussion of the issues. In sum, the victim was an eighty-three year old woman who suffered from Alzheimer's disease and lived with her son on a farm they owned. Wade worked on the farm and lived in a small building on the property. The victim was found naked on Wade's bed with injuries including a broken hip; she died several weeks later as a result of complications from those injuries. Pretrial examination of samples taken from the victim's vagina and clothing showed the presence of semen and sperm.[2] Neither the Commonwealth nor Wade sought DNA testing pretrial, and such testing has not since been conducted.

Following the affirmance of his murder conviction in 1998, Wade filed a motion in the Superior Court in October, 2002, seeking preservation of trial evidence; that motion was allowed. He thereafter filed a motion for DNA testing of the seminal fluid recovered from the victim and her clothing. That motion was denied in July, 2003, as was his motion for reconsideration.

---

[2]In its decision affirming the murder conviction, this court noted without further discussion that "[a] sexual assault examination performed on the victim was positive; there was evidence that the defendant had perpetrated the act." *Commonwealth* v. *Wade,* 428 Mass. 147, 148 (1998). In his decision denying Wade's motion pursuant to G. L. c. 278A, § 3 (§ 3 motion), the judge stated that a serology expert for the Commonwealth testified at trial that, given Wade's blood type, he could not be excluded as a possible contributor of the sperm and semen found on the victim. The same serologist also testified that a third party must have contributed to the specimen.

In his subsequent motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), Wade claimed that his trial counsel was ineffective for failing, among other things, to have requested DNA testing prior to trial; that motion was also denied. Wade then filed a petition in the county court seeking leave to appeal from those denials, which was denied without comment in 2004. In 2004, Wade filed a complaint in the United States District Court for the District of Massachusetts seeking to obtain access to DNA testing; that claim has been stayed but remains pending.[3]

In March, 2012, shortly after the enactment of G. L. c. 278A, Wade filed a § 3 motion seeking DNA testing.[4] On June 22, 2012, a Superior Court judge, who was not the trial judge, denied the § 3 motion on the ground that the requested DNA testing "does not appear to have the potential to produce material evidence" regarding the identification of the perpetrator of the crime and, thus, failed to meet the requirement of G. L. c. 278A, § 3 (*b*) (4). The denial was "without prejudice to [Wade's] right to refile with supplemental information."[5] Wade filed a renewed motion for DNA testing on October 15, 2012. The motion stated that he intended to supplement it with a

[3]Wade filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts, which he later amended to include a civil rights claim, asserting a right to deoxyribonucleic acid (DNA) testing. Concluding that due process principles support a right to DNA testing, a Federal District Court judge allowed Wade's motion for summary judgment pursuant to 42 U.S.C. § 1983 (2006). See *Wade* v. *Brady*, 612 F. Supp. 2d 90, 100-101, 104 (2009). That judgment was set aside, however, in accordance with the decision of the United States Supreme Court in *District Attorney's Office for the Third Judicial Dist.* v. *Osborne*, 557 U.S. 52, 84 (2009) (Alito, J., concurring), which the judge stated had held that a prosecutor's obligation to disclose material exculpatory evidence does not apply in a postconviction context. Thereafter, in *Skinner* v. *Switzer*, 131 S. Ct. 1289, 1293 (2011), the Supreme Court held that a convicted State inmate could, in a 42 U.S.C. § 1983 action, seek DNA testing of crime scene evidence based on due process rights. Wade's claim under 42 U.S.C. § 1983 was reopened and is currently stayed.

[4]Wade's first § 3 motion was filed approximately two months prior to the statute's effective date of May 17, 2012; this is of no consequence, however, as the judge did not rule on the motion until after the effective date.

[5]The judge also denied Wade's motion to proceed in forma pauperis and his motion to reconsider that request. The single justice has since allowed his request for appointment of counsel. See G. L. c. 278A, § 5.

memorandum of law and exhibits. On December 19, 2012, before any supplemental documentation was filed, a different Superior Court judge, who also was not the trial judge, denied the motion without a hearing in a margin ruling that referenced the decision denying the prior motion.[6] Wade filed a notice of appeal on January 15, 2013. He thereafter filed a petition in the county court pursuant to G. L. c. 278, § 33E, seeking leave to pursue an appeal from the denial of his renewed motion. The single justice allowed the motion and ordered that the appeal proceed before this court.[7]

At issue on appeal is whether Wade's § 3 motion meets the threshold requirements set forth in G. L. c. 278A, § 3 (b) (1)-(5), (d), to allow him to proceed to a hearing on the request for DNA testing, a question of first impression for this court. Wade contends that the motion judge applied an incorrect standard in denying his motion. The Commonwealth maintains that Wade's

[6]Wade's motion for reconsideration of the denial of his renewed motion was also denied.

[7]The Commonwealth contends, as it did before the single justice, that the G. L. c. 278, § 33E, petition should have been dismissed because Wade's appeal of the denial of his § 3 motion was untimely. See G. L. c. 278A, § 18. The Commonwealth relies in this regard on the date of the denial of Wade's initial § 3 motion, rather than the date of the denial of his renewed motion, from which the notice of appeal was timely. Characterizing the renewed motion as a "motion to reconsider," the Commonwealth maintains that the renewed motion was not timely filed within thirty days of the date of the denial of the first motion. This argument is unavailing.

Here, during the period after the denial of his first motion, Wade filed two motions, both of which were denied, seeking a declaration of indigence and eligibility for appointment of his pro bono counsel to pursue his claims for postconviction relief. As the Commonwealth concedes, the renewed motion was made in response to the Commonwealth's argument on Wade's motion to proceed in forma pauperis that Wade could not seek appointment of counsel while there was no § 3 motion pending before the Superior Court. Wade's appeal from the renewed motion was filed "within 30 days after the entry of judgment," G. L. c. 278A, § 18, and was therefore timely. Cf. Commonwealth v. Heiser, 56 Mass. App. Ct. 917, 918 (2002) (failure to appeal from dismissal without prejudice of original complaint does not constitute bar to appellate review of dismissal of amended complaint). Moreover, the Commonwealth concedes also that Wade is not barred from filing another § 3 motion on the same grounds; indeed, the statute appears to contemplate any number of such filings. Thus, requiring the defendant to refile another motion making the same arguments as in his first motion, and then to appeal therefrom, would be an exercise in needless expenditure of judicial resources.

motion properly was denied because it did not meet the requirements of G. L. c. 278A, § 3, in that the results of the requested testing lack potential to be material to the identification of the perpetrator, trial counsel was not ineffective in failing to request testing that would have been admissible at the time of trial, and Wade's affidavit fails to assert factual innocence.

*Discussion.* 1. *Statutory framework.* Whether the dismissal of Wade's § 3 motion was proper requires first that we determine the appropriate standard of review under G. L. c. 278A, § 3. We review questions of statutory interpretation de novo. *Rosnov* v. *Molloy*, 460 Mass. 474, 476 (2011).

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Flagg* v. *AliMed, Inc.*, 466 Mass. 23, 28 (2013), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). We construe the statute as "a consistent and harmonious whole," *EMC Corp.* v. *Commissioner of Revenue*, 433 Mass. 568, 574 (2001), and "[o]ur primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" *Water Dep't of Fairhaven* v. *Department of Envtl. Protection*, 455 Mass. 740, 744 (2010), quoting *International Org. of Masters, Mates & Pilots, Atl. & Gulf Region, AFL-CIO* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984).

Chapter 278A creates a two-step procedure for requesting DNA testing or analysis. First, a threshold determination is made by the court in which the conviction was entered as to whether the motion meets the preliminary criteria set forth in G. L. c. 278A, § 3. If those criteria are met, a hearing "shall" be conducted pursuant to G. L. c. 278A, §§ 6 and 7, to determine whether a petitioner has established by a preponderance of the evidence sufficient facts for a judge to order DNA testing or further discovery. Here we are concerned only with the threshold review at the first step, that is, whether Wade's motion meets the preliminary requirements of G. L. c. 278A, § 3.

Review at this initial stage must take place "expeditiously."[8] G. L. c. 278A, § 3 (e). The reviewing judge is required to "order a hearing on the motion if the motion meets the requirements of [G. L. c. 278A, § 3]." G. L. c. 278A, § 6 (a). Such a determination is "based on the information contained in the motion." G. L. c. 278A, § 3 (e). The motion must contain all of the information specified by G. L. c. 278A, § 3 (b),[9] and, "when relevant, shall include specific references to the record in the underlying case," or to affidavits of someone with "personal knowledge of the factual basis of the motion." Id. The § 3 motion also must explain why the requested testing was not conducted previously, by reference to one of five statutory reasons. See G. L. c. 278A, § 3 (b) (5). In addition, the moving party must file "an affidavit stating that the moving party is factually innocent of the offense of conviction and that the

[8]General Laws c. 278A, § 3 (e), provides, in relevant part:

"The court shall expediously review all motions filed and shall dismiss, without prejudice, any such motion without a hearing if the court determines, based on the information contained in the motion, that the motion does not meet the requirements set forth in this section. The prosecuting attorney may provide a response to the motion, to assist the court in considering whether the motion meets the requirement[s] under this section. The court shall notify the moving party and the prosecuting attorney as to whether the motion is sufficient to proceed under this chapter or is dismissed."

[9]As set forth in G. L. c. 278A, § 3 (b), the motion must include the following:

"(1) the name and a description of the requested forensic or scientific analysis; (2) information demonstrating that the requested analysis is admissible as evidence in courts of the commonwealth; (3) a description of the evidence or biological material that the moving party seeks to have analyzed or tested, including its location and chain of custody if known; (4) information demonstrating that the analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case; and (5) information demonstrating that the evidence or biological material has not been subjected to the requested analysis because [of one of five reasons enumerated in G. L. c. 278A, § 3 (b) (5)]."

If the moving party is unable to include any of these items, the party must include a description of efforts made to obtain the information and may move for discovery or seek information from the prosecutor or from any third party. See G. L. c. 278A, § 3 (c).

requested forensic or scientific analysis will support the claim of innocence." G. L. c. 278A, § 3 (*d*).[10]

If the motion meets these preliminary requirements, then the motion judge "shall order a hearing on the motion," G. L. c. 278A, § 6 (*a*); otherwise, the motion "shall" be dismissed without prejudice. See G. L. c. 278A, § 3 (*e*). That a moving party has pleaded guilty or has made an incriminating statement is not a basis upon which a motion judge may find "that identity was not or should not have been a material issue in the underlying case." G. L. c. 278A, § 3 (*d*). If a hearing is ordered following review, the Commonwealth "shall" file a response within sixty days and state any objections the prosecutor may have "to the requested analysis." G. L. c. 278A, § 4. If the motion judge determines, by a "preponderance of the evidence," that the criteria set forth in G. L. c. 278A, § 7 (*b*), have been met, the judge "shall allow" the requested testing. See G. L. c. 278A, § 7 (*a*), (*b*). In any event, the judge must "state findings of fact and conclusions of law on the record," or issue written findings and rulings, "that support the decision to allow or deny [the] motion."

By contrast to the evidentiary hearing described in G. L. c. 278A, § 7, the threshold determination to be made at the preliminary stage, pursuant to G. L. c. 278A, § 3, is far more limited, based primarily on the moving party's filings, and is essentially nonadversarial. Although "the prosecuting attorney *may* provide a response" (emphasis supplied) to a § 3 motion, at this initial stage the purpose of the response is to "assist the court in considering whether the motion meets the requirement[s] under this section." G. L. c. 278A, § 3 (*e*). Such a response stands in contrast to the requirement at the hearing stage that "the prosecuting attorney *shall* file a response" (emphasis supplied), G. L. c. 278A, § 4 (*b*), and such response "shall include any specific legal or factual objections that the prosecuting attorney has to the requested analysis." G. L. c. 278A, § 4 (*c*).

At the threshold stage of § 3, a moving party is not required to "establish any of the [statutory] factors" alleged in the

---

[10]The Commonwealth may file a response to the motion "to assist the court" in its consideration of the motion. G. L. c. 278A, § 3 (*e*).

§ 3 motion. See G. L. c. 278A, § 3 (*c*). At the hearing stage, on the other hand, the moving party must do so by a "preponderance of the evidence." See G. L. c. 278A, § 7 (*b*). If, at this preliminary stage, a moving party is unable to file with the § 3 motion any of the information required under G. L. c. 278A, § 3 (*b*), or lacks information "necessary to establish any of the factors" set forth in G. L. c. 278A, § 7, the moving party may seek discovery to obtain such information, and "shall" include in the § 3 motion a description of efforts made to obtain such information. See G. L. c. 278A, § 3 (*c*). Further, the judge who presided over the underlying case "shall conduct the hearing if possible," see G. L. c. 278A, § 6 (*b*), but nothing in the statutory language suggests that it is the trial judge who must make the preliminary determination whether the § 3 motion meets the statutory requirements. See G. L. c. 278A, § 3.

Viewed in light of the act as a whole, the Legislature clearly intended that, to proceed to a hearing, a § 3 motion requires only the limited showing set forth explicitly in G. L. c. 278A, § 3 (*b*) and (*d*), and review of the motion in order to determine whether a hearing will be conducted is confined to the assertions in the motion, the affidavits and supporting documents attached thereto, and any response that may be filed by the Commonwealth to assist the court.

The limited nature of this review at the § 3 stage is further supported by the legislative history of G. L. c. 278A. The legislative findings that accompanied both the House and Senate versions of the proposed act state that the purpose of the legislation was "to remedy the injustice of wrongful convictions of factually innocent persons by allowing access to analyses of biological material with newer forensic and scientific techniques." 2011 Senate Doc. No. 753. 2011 House Doc. No. 2165. The findings state that "these forensic and scientific techniques provide a more reliable basis for establishing a factually correct verdict than the evidence available at the time of the original conviction," and that, "in recent years, there have been a significant number of exonerations based on the results of newly developed forensic and scientific techniques." 2011 Senate Doc. No. 753. 2011 House Doc. No. 2165. During consideration of the proposed act, documentary materials and testimony were

introduced at the legislative hearing indicating that defendants who sought access to DNA through motions for a new trial under Mass. R. Crim. P. 30 (b) faced long delays and impediments to access. One of the act's early sponsors observed that a motion for a new trial under Mass. R. Crim. P. 30 (b) was "not well suited" to enabling "people to get at the DNA evidence" that ultimately "will have a material effect upon the outcome of the case." See Hearing on 2011 Senate Doc. No. 1987 (House Sess.) (Feb. 8, 2012) (remarks of Rep. John V. Fernandes). A motion for a new trial is discretionary and may be denied without a hearing, and a defendant is not entitled to obtain scientific testing of evidence "unless he makes a prima facie showing that the test results would warrant a new trial." *Commonwealth v. Evans*, 439 Mass. 184, 204-205, cert. denied, 540 U.S. 923, and 540 U.S. 973 (2003). The sponsor remarked that, to be granted a new trial, a defendant must demonstrate that he is in possession of "evidence that is worthy of a trial. But in the case of DNA evidence, it is about getting to that evidence first to be able to present." See Remarks of Rep. Fernandes, *supra.*

Thus, a motion for scientific testing under G. L. c. 278A is conceived as separate from the trial process and any postconviction proceedings challenging the underlying conviction. The act was intended to "create[] the process that allows the testing," the results of which subsequently might support a motion for a new trial. See Remarks of Rep. Fernandes, *supra.* If a moving party were to prevail on a § 3 motion seeking DNA testing and subsequently received test results favorable to his claim, the moving party would then be required to file a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b) before a court could consider whether the moving party is entitled to a new trial.

Based on the plain language of the statute and the purpose for which it was enacted, it is clear that the Legislature intended the determination of whether a motion meets the requirements of G. L. c. 278A, § 3, such that the moving party is entitled to proceed to a hearing, to be a limited, threshold inquiry. A judge conducting this inquiry is not called upon to make credibility determinations, or to consider the relative weight of the evidence or the strength of the case presented against the moving party at

trial; review at this stage is limited to the § 3 motion, its supporting documents and affidavits, and any response that the Commonwealth may file to assist the court.

Here, as ordinarily would be the case, the motion judge based his decision on the documents filed. Therefore, we consider de novo whether Wade's motion and affidavits meet the requirements of G. L. c. 278A, § 3, and afford no deference to the motion judge on questions of fact. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997).

2. *Requirements of G. L. c. 278A, § 3.* As stated, G. L. c. 278A, § 3 (*b*), sets forth five items of information that must be included in a § 3 motion, and G. L. c. 278A, § 3 (*d*), specifies an assertion that must be made in an affidavit accompanying the motion, in order to meet the threshold requirements entitling the moving party to a hearing on the motion. The Commonwealth does not dispute that Wade's motion meets the first three of these requirements.[11,12] We turn therefore to a discussion of the remaining items.

a. *Potential of analysis to result in evidence material to identity.* A § 3 motion must include information "demonstrating that the analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case." G. L. c. 278A, § 3 (*b*) (4). Wade asserts in his motion that the evidence of biological material present on the victim's clothing, the vaginal swab, and the vaginal smear slide is "directly relevant to the victim's sexual assault." He states that DNA testing of these

---

[11]Wade's motion specifies the type of analysis (DNA testing) he is seeking, G. L. c. 278A, § 3 (*b*) (1); asserts that DNA test results are admissible evidence in a criminal trial, G. L. c. 278A, § 3 (*b*) (2); and describes the biological evidence sought to be tested, G. L. c. 278A, § 3 (*b*) (3). Specifically, the motion requests testing of the victim's pants, the vaginal swab, the semen slide, and a bloody pants swatch.

[12]In his assertions concerning the admissibility of DNA evidence, Wade relies largely on his description of the serological evidence that was introduced at his trial, and on his contention that "if the rudimentary serology evidence, central to the Commonwealth's case, were admissible, then the significantly more sophisticated and conclusive DNA evidence certainly would be admissible." In any event, in our decision in *Commonwealth* v. *Vao Sok*, 425 Mass. 787, 800-801 (1997), we held for the first time that results of certain DNA testing met the test of scientific reliability and were therefore admissible.

items has the potential to result in evidence that is material to the identification of the perpetrator of the rape because the results of the DNA testing could show a DNA profile inconsistent with his own profile. Wade's motion references the affidavit of an expert in forensics, attached to the motion, attesting that, "if the items designated . . . are tested using current [short tandem repeat (STR)] DNA testing methods, said tests will determine conclusively whether the defendant is a contributor . . . and whether he is the sole contributor."[13]

In concluding that Wade's motion failed to meet the requirement of G. L. c. 278A, § 3 (b) (4), the judge stated that even if Wade "were statistically excluded as a possible donor of the biological material found within and on the person of the victim, that exclusion would not . . . establish a 'reasonable probability of a more favorable result at trial.' " The judge reasoned that Wade could have committed the rape without penile penetration or the emission of semen, and that the jury already knew that a third party was potentially involved because of the serological evidence presented at trial. Dismissal of the motion on this ground was error. Neither G. L. c. 278A, § 3 (b) (4), nor any other subsection of G. L. c. 278A, § 3, imposes upon a moving party the burden of establishing a reasonable probability of a more favorable result at trial.

General Laws c. 278A, § 3 (b) (4), imposes the more modest threshold requirement that a moving party provide information demonstrating that the "analysis has the potential to result in evidence that is material to the moving party's identification of the perpetrator of the crime." To determine whether a moving

---

[13]Wade's motion also cites a decision involving his efforts to obtain DNA testing in the United States District Court. See *Wade* v. *Brady*, 612 F. Supp. 2d 90, 103 (D. Mass. 2009). The judge in that case cited Wade's argument that the Commonwealth's serologist concluded that Wade "cannot be the source of the A antigens found on the victim's clothing." *Id.* The attachments to the motion also include trial testimony and reports of the serologist, who testified to her examination of two of the items Wade seeks to have retested, and concluded that, "at this level of analysis, the suspect [Wade] cannot be excluded" as a possible contributor of the semen. The same serologist also testified, however, that her examination indicated "the presence of more than one contributor" to the vaginal specimen, and that testing of seminal fluid residue on a cutting from the victim's pants revealed the presence of an A antigen that must have been contributed by a third party.

party meets this requirement, it is necessary to consider only whether the test results could be material to the question of the identity of the person who committed the criminal act of which the moving party was convicted. A moving party has no burden to establish that the requested analysis would have had any effect on the underlying conviction, and the motion judge is not called upon to weigh the evidence that was presented at trial against alternative theories of guilt. See part 2.b, *infra.*

Here, Wade provided information to demonstrate that the requested DNA testing could be material to the question of who committed the predicate felony of aggravated rape. Testing of the samples from the victim's vagina and clothing possibly could result in a DNA profile that excludes Wade as a contributor. Such a result clearly would be material to the question of the identity of the individual who raped the victim.[14] Whether Wade is likely to obtain such a result is not relevant to the analysis; what is relevant is that DNA testing has the potential to produce a result that is material to Wade's identification as the perpetrator of the rape.

The Commonwealth argues that G. L. c. 278A, § 3, requires a showing that DNA testing has the potential to produce a result material to identification of the perpetrator on any theory of how the crime might have occurred, rather than on the Commonwealth's theory of the case at trial. We decline to adopt this interpretation, which is suggested nowhere in the statute's language or its legislative history. Furthermore, in these circumstances, the Commonwealth's interpretation would require Wade to demonstrate that a DNA test result would be material to identifying him as the perpetrator of rape as a joint venturer, or attempted rape, or a conspiracy to commit rape, none of which were theories introduced at trial.

Our view of G. L. c. 278A, § 3 (*b*) (4), is supported by the

---

[14]At Wade's trial, the prosecutor told the jury that the victim "had been penetrated, that she had had sexual intercourse," and that analysis of vaginal samples from the victim determined that the defendant "cannot be excluded" as the source. Neither the prosecutor nor defense counsel argued that the defendant was involved in a joint venture with a third party; to the contrary, the Commonwealth argued in closing that the defendant was "the only person there." Given this theory of the case, the requested DNA testing has potential to result in evidence material to Wade's identification as the perpetrator of the rape.

legislative history and the structure of the statute. In enacting
G. L. c. 278A, the Legislature separated the procedure for seek-
ing forensic testing from the procedure for seeking scientific
testing in conjunction with a motion for a new trial pursuant to
Mass. R. Crim. P. 30 (b), and intended that G. L. c. 278A pro-
vide increased and expeditious access to scientific or forensic
testing. It would thwart the legislative purpose to impose on a
moving party seeking forensic analysis pursuant to G. L. c. 278A
an equal or greater burden of proof than that which is required
of a party seeking discovery under Mass. R. Crim. P. 30 (c) (4).

When G. L. c. 278A was enacted on February 17, 2012, Mas-
sachusetts was the forty-ninth State, in addition to the Federal
government and the District of Columbia, to enact legislation
providing for access to postconviction DNA testing.[15] The
language of G. L. c. 278A, § 3 (*b*), sets a far lower bar for ac-
cess to scientific testing than that required by similar statutes in
other States.[16] In particular, the Legislature elected to include
a provision requiring that scientific testing be material to
identity, but did not condition access to such testing on some
degree of proof that the test results will raise doubt about the
conviction. We decline to adopt an interpretation of the statute
that appears to conflict with the stated purpose of the Legislature
in enacting it.

b. *Reason the material has not been subjected to the requested*

[15]See *District Attorney's Office for the Third Judicial Dist.* v. *Osborne*,
557 U.S. 52, 79 n.2 (2009) (Alito, J., concurring) (collecting statutes).
Thereafter, in 2013, Oklahoma became the fiftieth State to enact such legislation.
See Okla. Stat. Ann. tit. 22, § 1373 (West 2013).

[16]The statutes in most other jurisdictions include a provision requiring a
party seeking DNA testing to show some degree of likelihood, often stated as
"a reasonable probability," that the moving party is innocent or that the result
at trial would have been more favorable had the test results been provided to
the fact finder. See, e.g., Cal. Penal Code § 1405(c)(1)(B) (West 2013); Ga.
Code Ann. § 5-5-41(c)(1)(D) (2013). In addition, in many statutes with a
requirement similar to G. L. c. 278A, § 3 (*b*) (4), there is also a requirement
that a moving party must show that the requested testing would have affected
the likelihood of conviction. See, e.g., *Johnson* v. *State*, 827 N.E.2d 547, 552
(Ind. 2005) (under Indiana statute, petitioner seeking DNA testing must show
that "evidence to be tested is material to identifying him as a perpetrator and
a 'reasonable probability' that he would not have been convicted or would not
have received as severe a sentence"). See also S.C. Code Ann. § 17-28-90(B)
(2012); W. Va. Code § 15-2B-14(f) (2009); Wyo. Stat. Ann. § 7-12-303
(2013).

*analysis.* To meet the requirement set forth in G. L. c. 278A, § 3 (*b*) (5), a motion seeking scientific testing must include "information demonstrating that the evidence or biological material has not been subjected to the requested analysis" for one of five enumerated reasons. Wade's motion asserts that DNA testing has not been conducted in his case because, as stated in G. L. c. 278A, § 3 (*b*) (5) (iv),[17] a "reasonably effective attorney would have sought the analysis" and his attorney failed to seek such analysis.[18]

Included in the motion is information that pretrial serological tests of samples taken from the victim's vagina and a cutting from the pants she was wearing revealed the presence of a third party's seminal fluid; the Commonwealth's theory at trial, however, was that Wade committed the rape alone. See note 14, *supra.* Pretrial DNA testing might have revealed the identity of the third party or excluded Wade as the source of the semen and sperm. Wade therefore provided sufficient information to demonstrate that a reasonably effective attorney would have sought DNA testing. That there was a risk that pretrial DNA testing might inculpate Wade is a risk that a reasonably effective attorney in these circumstances might have chosen to incur, particularly where there already was some evidence of a third party's involvement. Moreover, had DNA testing inculpated Wade, trial counsel would not have been left without a defense — indeed, trial counsel's primary theory of defense was consent.

The Commonwealth apparently assumes that the standard

---

[17]General Laws c. 278A, § 3 (*b*) (5) (iv), provides that one reason a moving party may proffer as to why the requested testing has not been conducted is that:

> "the moving party's attorney in the underlying case was aware at the time of the conviction of the existence of the evidence or biological material, the results of the requested analysis were admissible as evidence in courts of the commonwealth, a reasonably effective attorney would have sought the analysis and either the moving party's attorney failed to seek the analysis or the judge denied the request."

[18]Wade's § 3 motion suggests also that "the results of the requested analysis were not admissible in the courts of the commonwealth at the time of the conviction." See G. L. c. 278A, § 3 (*b*) (5) (ii). This contention is unavailing. Our decision in *Commonwealth* v. *Vao Sok,* 425 Mass. 787 (1997), was released one week before the commencement of Wade's trial.

applicable for determining whether trial counsel was reasonably effective under G. L. c. 278A, § 3 (*b*) (5) (iv), is the same as that for assessing a claim of ineffective assistance of counsel. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974). Citing *Commonwealth* v. *Goodreau*, 442 Mass. 341, 354 (2004), the Commonwealth notes the absence of an affidavit of counsel, typically required to support ineffective assistance claims, and further argues that Wade was required to assert facts establishing that his trial counsel's decision not to pursue DNA testing was "manifestly unreasonable." See *Commonwealth* v. *Watson*, 455 Mass. 246, 256 (2009) (strategic or tactical decision by counsel will not be considered ineffective assistance unless "manifestly unreasonable when made").

Although the Commonwealth's interpretation arguably may be consistent with the phrase "reasonably effective attorney" as it appears in G. L. c. 278A, § 3 (*b*) (5) (iv), an interpretation of this phrase that imports the standard of ineffective assistance of counsel does not accord with the Legislature's intent of promoting access to DNA testing regardless of the presence of overwhelming evidence of guilt in the underlying trial.[19] In light of the legislative intent in enacting G. L. c. 278A as a separate and expedited mechanism for requesting DNA analysis, we interpret G. L. c. 278A, § 3 (*b*) (5) (iv), as requiring information demonstrating only that "*a*" reasonably effective attorney would have sought the requested analysis, not that *every* reasonably effective attorney would have done so. Thus, a determination that the failure of Wade's trial counsel to seek DNA testing was a reasonable, strategic decision, and not manifestly unreasonable, does not preclude a determination that "a reasonably effective attorney" would have done so.[20] In further support of this interpretation, we note that the language of G. L. c. 278A,

---

[19]In *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974), we formulated the general standard for determining whether a defendant has received effective assistance of counsel within the meaning of the Sixth Amendment to the United States Constitution, noting, but not adopting, language in an earlier formulation that called for "counsel reasonably likely to render *and rendering* reasonably effective assistance." *Id.* at 96 & n.11, quoting *Commonwealth* v. *Bernier*, 359 Mass. 13, 17 (1971). Since that decision, our cases generally do not advert to a "reasonably effective attorney" in the context of a claim of ineffective assistance of counsel.

[20]The Commonwealth's argument that the denial of Wade's 2003 new trial

§ 3 (b) (5) (iv), contrasts with provisions in statutes in other jurisdictions providing for postconviction DNA testing, which explicitly incorporate the ineffective assistance of counsel standard, or explicitly require that trial counsel not have made a strategic or tactical decision in forgoing a request for DNA testing.[21]

In light of the foregoing interpretation, the information provided by Wade in support of his statement that a reasonably effective attorney would have sought DNA testing met the requirements of G. L. c. 278A, § 3 (b) (5) (iv).

c. *Assertion of factual innocence.* A § 3 motion for DNA testing must be filed with an affidavit stating that the moving party is "factually innocent of the offense of conviction and that the requested forensic or scientific analysis will support the claim of innocence." See G. L. c. 278A, § 3 (d). The statute defines "factually innocent" as "a person convicted of a criminal offense who did not commit that offense." G. L. c. 278A, § 1. Thus, to assert factual innocence, a moving party must assert that he did not commit the offense of which he was convicted.

Here, the offense is felony-murder predicated on aggravated

motion estops Wade from arguing here that reasonably effective counsel would have sought DNA testing is unavailing. As stated, a different legal standard applies to G. L. c. 278A, § 3 (b) (5) (iv). See *Commonwealth* v. *Rodriguez*, 443 Mass. 707, 710 (2005) (estoppel inapplicable where legal issues are different).

[21]Compare G. L. c. 278A, § 3 (b) (5) (iv), with Colo. Rev. Stat. Ann. § 18-1-413(c)(II) (West 2013) (where petitioner fails to secure available DNA testing at time of trial, petitioner must show that failure was "for reasons that constitute justifiable excuse, ineffective assistance of counsel, or excusable neglect"), Nev. Rev. Stat. § 176.0918(3)(e) (2013) (where genetic marker testing was available at time of trial, moving party seeking postconviction testing must state that failure to request testing prior to conviction "was not a result of a strategic or tactical decision as part of the representation of the petitioner at the trial"), Utah Code Ann. § 78B-9-301(4) (LexisNexis 2012) (postconviction DNA testing not permitted where DNA testing was available at time of trial and moving party did not request or present it "for tactical reasons"), W. Va. Code § 15-2B-14(f)(8) (court may grant motion for DNA testing if evidence or testing was not available at the time of trial "or a court has found ineffective assistance of counsel"), and Wyo. Stat. Ann. § 7-12-303(d) (court may not order DNA testing if testing was not requested "for strategic or tactical reasons or as a result of a lack of due diligence, unless the failure to exercise due diligence is found to be a result of ineffective assistance of counsel").

rape. Wade's affidavit states, "I did not have sexual intercourse with [the victim], I did not rape her, and I am innocent of both rape and murder." Wade also submitted an affidavit from a forensic expert which stated that the requested testing would, in the opinion of the expert, determine conclusively whether Wade was a contributor or the sole contributor to the DNA found on the victim. Because Wade's affidavit avers that he is innocent of the crime of which he was convicted, and the expert's affidavit asserts that the requested testing will support this claim, Wade's § 3 motion meets the requirements of G. L. c. 278A, § 3 (*d*).

The Commonwealth argues that these statements do not suffice to meet the requirement that Wade attest that he is "factually innocent," see G. L. c. 278A, § 3 (*d*), because Wade did not specifically disavow facts that would preclude alternative theories of guilt. In this regard, the Commonwealth contends first that Wade's affidavit does not assert factual innocence because he states that, on the day of the crime, he was too drunk to have had sexual intercourse.[22] The Commonwealth is correct that this statement, standing alone, would be insufficient to assert "factual innocence" under G. L. c. 278A, § 3 (*d*), but it is only one of the assertions in Wade's affidavit.

The Commonwealth contends also that because Wade did not disclaim involvement in any type of touching, or attempted touching, of the victim's vagina without her consent, he failed adequately to assert factual innocence of the rape, since a rape may be attempted or committed in ways other than by penile penetration. The Commonwealth maintains further that Wade failed to assert factual innocence of the murder, since he did not disavow having caused injury to the victim, and did not provide an explanation of the other evidence offered against him at trial that would be consistent with innocence.

We reject this strained construction of the language of G. L. c. 278A, § 3 (*d*). Such an interpretation would require a moving party to aver specific facts supporting innocence on any conceivable theory of guilt, including, as here, those that were not presented by the Commonwealth at trial, rather than state that he is "innocent of the offense of conviction." This would place

---

[22]In his affidavit, the defendant states that, on the night of the crime, he "drank a twelve-pack of beer, a six-pack of beer, and three bottles of wine."

a substantial burden on convicted individuals to disprove every element of the Commonwealth's case against them, as well as every element of any conceivable theory of the crime that could have been alleged in the circumstances, a result unsupported by the statutory language and clearly not intended by the Legislature.

The Commonwealth suggests also that Wade cannot now make an assertion of factual innocence, since earlier he had stated, in explaining the victim's presence in his house, that the victim "came to me."[23] The plain language of G. L. c. 278A, § 3 (d), however, and the purposes for which the act was enacted evince a clear intent by the Legislature to ensure that a moving party will be able to meet the requirements of G. L. c. 278A, § 3, notwithstanding any incriminating statements the party may have made, a guilty plea, or a plea of nolo contendere.[24] See G. L. c. 278A, § 3 (d).

Our interpretation is further supported by the meaning generally attributed to the phrase "factually innocent" as distinct from the phrase "legally innocent." See, e.g., *Bousley* v. *United States*, 523 U.S. 614, 623 (1998) (" 'actual innocence' means factual innocence, not mere legal insufficiency"); *Drumgold* v. *Commonwealth*, 458 Mass. 367, 379 (2010) (Cowin, J., dissenting) ("The Legislature is presumably aware of the important

---

[23]The Commonwealth also argues that the affidavit asserting the moving party's factual innocence must be "signed by a person with personal knowledge of the factual basis of the motion." See G. L. c. 278A, § 3 (b). This is incorrect; the requirements of the affidavit asserting the moving party's factual innocence are set out at G. L. c. 278A, § 3 (d), and discussed in this opinion, *supra*.

[24]General Laws c. 278A, § 3 (d), provides, in relevant part:

"A person who pleaded guilty or nolo contendere in the underlying case may file a motion. The court shall not find that identity was not or could not have been a material issue in the underlying case because of the plea. A person who is alleged to have, or admits to having, made a statement that is or could be incriminating may file a motion under this chapter. The court shall not find that identity was not or should not have been a material issue in the underlying case because the moving party made, or is alleged to have made, an incriminating statement. If the moving party entered a plea of guilty or nolo contendere to the offense of conviction or made an incriminating statement, the moving party shall state in the affidavit that the claim of factual innocence is made notwithstanding the plea or incriminating statement."

distinction between grounds tending to establish innocence and those tending to support dismissal, acquittal, or reversal of a criminal charge on other grounds"). By employing the phrase "factually innocent" in G. L. c. 278A, § 3 (*d*), the Legislature clearly intended to require a moving party to assert that the party did not commit the offense of which the party was convicted; an assertion of legal innocence, such as a belief in an entitlement to a reversal based on insufficient evidence or a procedural fault, would not meet the plain terms of the statute. The Legislature did not, however, intend to require a moving party to make a statement that not only would support a claim of factual innocence, but also, if credited, would render guilt a factual impossibility. Such a requirement would not only exceed the standard for allowing a motion for a new trial by a preponderance of the evidence, see *Commonwealth* v. *Evans*, 439 Mass. 184, 203 (2003), quoting *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986) (new trial granted upon determination of "substantial risk that the jury would have reached a different conclusion"), but also exceed the standard of proof beyond a reasonable doubt that the Commonwealth must meet in order to obtain a conviction.

*Conclusion.* The order denying the G. L. c. 278A, § 3, motion is reversed. The case is remanded to the Superior Court for a hearing pursuant to G. L. c. 278A, § 7.

*So ordered.*