## COMMONWEALTH vs. STANLEY DONALD.

Middlesex. November 4, 2013. - May 6, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Deoxyribonucleic Acid. Practice, Criminal,* Postconviction relief. *Evidence,* Scientific test.

A Superior Court judge correctly denied the criminal defendant's renewed postconviction motion pursuant to G. L. c. 278A, § 3, seeking to have deoxyribonucleic acid (DNA) evidence introduced at trial analyzed using a newer and more sophisticated testing technique, and to have additional evidence undergo initial DNA testing, where, although the judge should not have taken into consideration or relied on the weight of the evidence introduced against the defendant at trial [41-43], and although, to the extent that the judge denied the motion solely on the ground that DNA testing previously had been conducted, the denial was error in light of information provided in the defendant's motion that demonstrated that the testing he sought offered a material improvement in accuracy compared to the DNA testing that previously had been conducted [43-47], the motion did not provide information demonstrating why the more advanced testing requested had not been conducted at the time of his conviction [47-48].

INDICTMENTS found and returned in the Superior Court Department on December 19, 1997.

The cases were tried before *Robert A. Barton*, J., and motions for access to and scientific analysis of biological evidence, filed on March 15 and April 20, 2012, were considered by *Diane M. Kottmyer*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Thomas D. Frothingham* for the defendant.

*Hallie White Speight*, Assistant District Attorney, for the Commonwealth.

*Lisa M. Kavanaugh*, Committee for Public Counsel Services, *Denise McWilliams, & Elizabeth A. Lunt*, for Committee for Public Counsel Services Innocence Program & others, amici curiae, submitted a brief.

*William M. Taylor*, for the Innocence Network, amicus curiae, submitted a brief.

DUFFLY, J. In April, 1999, Stanley Donald was convicted by a Superior Court jury on two indictments charging aggravated rape, as well as indictments charging unarmed robbery, kidnapping, carjacking, and assault and battery by means of a dangerous weapon.[1] Evidence at trial indicated that Donald's deoxyribonucleic acid (DNA) profile matched that of sperm found on underwear worn by the victim on the day of the offense. For approximately ten years, Donald has sought, unsuccessfully, to have the sperm sample analyzed with a newer and more sophisticated technique for DNA testing; he also has requested that initial DNA tests be performed on other biological evidence. Following the Legislature's enactment of G. L. c. 278A, "An Act providing access to forensic and scientific evidence," see St. 2012, c. 38, Donald filed two motions pursuant to G. L. c. 278A, § 3 (§ 3 motions), again seeking the more sophisticated DNA testing. A Superior Court judge denied his first motion on the ground that DNA testing already had been conducted, and also denied his renewed motion, noting that the evidence against Donald was overwhelming. Donald appealed from the denial of his renewed § 3 motion, and we granted his application for direct appellate review.

In *Commonwealth* v. *Wade*, 467 Mass. 496, 501-506 (2014), we considered the threshold requirements that must be met by a party seeking scientific testing or forensic analysis pursuant to G. L. c. 278A, § 3, and the standard for determining whether those requirements have been met. That case, however, did not present the question with which we are confronted here: whether G. L. c. 278A permits access to scientific testing where such testing previously has been conducted using a less advanced technique. We conclude that it does, and therefore, to the extent that the judge denied Donald's motion on the ground that an older form of DNA testing previously had been conducted, the denial was error. Because Donald's motion does not contain information demonstrating that the requested analysis was not developed at the time of his conviction, however, and provides

---

[1]The Appeals Court affirmed the convictions. See *Commonwealth* v. *Donald*, 56 Mass. App. Ct. 1102 (2002).

no other explanation why the requested testing was unavailable at trial, see G. L. c. 278A, § 3 (*b*) (5), we affirm the denial of the motion, on grounds different from those relied upon by the motion judge. See *Commonwealth* v. *Va Meng Joe,* 425 Mass. 99, 102 (1997).

*Background.* On the morning of October 21, 1997, the victim was accosted in the parking lot of her apartment building by an African-American male whom she later identified as the defendant.[2] He demanded cash, took her keys, and ordered her into her vehicle. The man got into the driver's seat of the vehicle, drove some distance, and repeatedly threatened her. He also took her driver's license and bank access card, and obtained the password for that card. He then parked in a secluded area. There, he pulled the victim out of her vehicle, physically assaulted her, and demanded that she take off her clothes. He raped the victim, penetrating her vagina with his tongue and penis, and drove off in the victim's automobile, leaving her behind. The victim was taken to a hospital where she was treated for her injuries and a "rape kit" was obtained.[3]

Donald was identified as the individual who, a short time after the rape, used the victim's bank access card to withdraw cash from an automated teller machine located four miles from the scene of that crime. Police located the victim's vehicle about twenty miles from the scene; Donald's driver's license was found approximately fifty yards from the vehicle. A cutting from the victim's underwear was submitted to a private laboratory for DNA testing. Analysts at that laboratory compared the DNA profile of the sperm samples from the cutting with Donald's DNA profile using the polymerase chain reaction (PCR) method of DNA testing.[4] This yielded a DNA profile that occurs in one in 7,800 African Americans, and from which Donald could not

---

[2]In summarizing the evidence introduced at Stanley Donald's trial, we rely on the statement of the facts set forth in *Commonwealth* v. *Donald,* 56 Mass. App. Ct. 1102.

[3]The Appeals Court's decision does not mention the rape kit, but a report from the State crime laboratory, filed with Donald's initial G. L. c. 278A, § 3, motion (§ 3 motion), includes a particular, numbered rape kit.

[4]We described the polymerase chain reaction (PCR) method of deoxyribonucleic acid (DNA) testing in *Commonwealth* v. *Vao Sok,* 425 Mass. 787, 790-791 (1997).

be excluded. Neither the evidence in the rape kit nor any piece of physical evidence other than the victim's underwear has been subjected to DNA testing.

Beginning in 2001, for the most part proceeding pro se but intermittently represented by counsel, Donald has sought to have DNA testing performed on certain portions of the evidence, including the victim's underwear, often through motions for a new trial pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001). He also has sought funds for DNA testing, and discovery concerning the biological evidence recovered at the scene. With the exception of a motion to preserve evidence, all such motions have been denied.[5]

In 2012, Donald, acting pro se, sent a letter to a Superior Court judge seeking to obtain DNA testing pursuant to G. L. c. 278A. Treating that letter as a § 3 motion, the judge, who was not the trial judge, denied the motion on the ground that Donald had not complied with G. L. c. 278A § 3 (b); in a margin notation, she "note[d], in particular," that DNA testing had been performed and that the test results had been admitted at trial. Thereafter, represented by appointed counsel, Donald filed a § 3 motion that was denied by the same judge, citing the previous denial. Donald then filed a renewed § 3 motion, providing additional information and requesting that, if the motion were again denied, the judge identify "the specific failure resulting in denial." The judge denied the renewed motion, referencing her earlier denial and stating also that "the evidence against the defendant (excluding DNA evidence) was overwhelming." Donald appealed from that denial,[6] and we granted his application for direct appellate review.

---

[5]In 2006, Donald also filed a petition in the United States District Court for the District of Massachusetts, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1996), which included a request for access to physical evidence for the purpose of DNA testing. A District Court judge denied the petition, and the United States Court of Appeals for the First Circuit affirmed the denial of that petition. See Donald v. Spencer, 656 F.3d 14, 15 (1st Cir. 2011). In response to Donald's claim that advancements in DNA testing "would inure to his benefit by establishing his innocence," the court concluded that, "given the evidence amassed against him, Donald offers us nothing other than pure speculation to suggest that he would ultimately be entitled to relief." Id. at 18.

[6]The Appeals Court consolidated Donald's appeal from the denial of the

*Discussion.* This case is controlled in many respects by our decision in *Commonwealth* v. *Wade, supra.* The determination whether a motion for scientific testing meets the requirements of G. L. c. 278A, § 3, the initial stage of a two-part process, is a "limited, threshold inquiry." *Commonwealth* v. *Wade, supra* at 505. In order to proceed to the second stage of that process, an evidentiary hearing, a moving party is required to provide information demonstrating that he or she meets the requirements of G. L. c. 278A, § 3 (*b*), and to submit an affidavit as required by G. L. c. 278A, § 3 (*d*). See *Commonwealth* v. *Wade, supra* at 502-503. At this preliminary stage, a moving party is required only to point to the existence of specific information that satisfies the statutory requirements. See *id.* at 503-504. Compare G. L. c. 278A, § 3 (*b*), with G. L. c. 278A, § 7 (*b*) (at hearing pursuant to G. L. c. 278A, § 7, moving party must make evidentiary showing by preponderance of evidence). See note 12, *infra.*

The judge who denied Donald's renewed motion for DNA testing did not state explicitly which of the provisions of G. L. c. 278A, § 3, the motion failed to meet. However, the judge took note of the weight of the evidence introduced against Donald at trial, as well as the fact that DNA testing previously had been performed and the test results admitted at Donald's trial. In determining whether a § 3 motion meets the statutory requirements, a judge should not "consider the relative weight of the evidence or the strength of the case presented against the moving party at trial." *Commonwealth* v. *Wade, supra* at 505-506. Here, the judge did consider, and apparently rely on, the weight of the evidence supporting Donald's conviction. We review Donald's motion de novo to determine whether it satisfies the statutory requirements. See *id.* at 506.

Donald's renewed § 3 motion requests that biological evidence be subjected to "DNA testing methods provided by Profiler Plus and Cofiler," and references attached documents that contain the manufacturer's descriptions of the "AmpFlSTR Pro-

§ 3 motion with his appeal from the denial of a claim for postconviction relief, brought pursuant to *Commonwealth* v. *Moffett*, 383 Mass. 201, 208 (1981), asserting, inter alia, violations of his right to a public trial. We have reviewed these claims and conclude that there was no error.

filer Plus ID PCR Amplification Kit" (Profiler Plus kit) and the
"AmpFlSTR Cofiler PCR Amplification Kit" (Cofiler kit). The
motion cites *Commonwealth* v. *Gaynor*, 443 Mass. 245, 266
(2005), in which we affirmed the admissibility of test results
obtained from Profiler Plus and Cofiler kits. The biological
evidence that Donald seeks to have tested includes a saliva
sample, head hairs, and pubic hairs collected from the victim
and included in the rape kit, as well as a cutting from the victim's
underwear. The motion notes that this material has been logged
as evidence by the Watertown police department and has been
preserved.[7] The renewed motion incorporates an affidavit in
which Donald avers, "I have steadfastly maintained my inno-
cence in this case," and states that DNA testing "will exonerate
me as the source of the sperm found by the Commonwealth."
The motion therefore satisfies G. L. c. 278A, § 3 (*b*) (1)-(3), (*d*).
See *Commonwealth* v. *Wade*, *supra* at 506 n.11, 512.

The motion also satisfies the requirement of G. L. c. 278A,
§ 3 (*b*) (4),[8] with respect to testing of sperm on the underwear
cutting, and of saliva and hair in the rape kit.[9] The motion
refers to an attached letter written by Dr. Donald E. Riley, a
DNA consultant at the University of Washington, in which
Riley states that "[t]he newer DNA testing format, using Pro-
filer Plus and Cofiler, is more powerful statistically than PM
plus DQA1 that was used previously in [Donald's] case." Riley
also states that "some cases have been reversed on that basis."

Donald's renewed § 3 motion incorporates his earlier § 3
motion, which explained, with references to expert testimony at
trial, that based on DNA testing of the sperm found on the

[7]Donald's motion to preserve evidence was allowed in October, 1999.

[8]General Laws c. 278A, § 3 (*b*) (4), requires that a moving party provide
"information demonstrating that the analysis has the potential to result in
evidence that is material to the moving party's identification as the perpetrator
of the crime in the underlying case."

[9]Donald also requests testing of a number of other pieces of biological
evidence, including blood found on and around the victim's vehicle, the
victim's sweater, and a brown bag. He also requests testing of all the contents
of the rape kit, which include, in addition to the saliva and hairs, genital
swabs and vaginal swabs on which neither seminal fluid nor sperm cells were
detected. We do not reach the question whether Donald has provided informa-
tion demonstrating that any of these items has the potential to result in evidence
that is material to his identification as the perpetrator of the crimes.

victim's underwear, Donald could not be excluded as a source
of the sperm. The motion states that Donald's conviction there-
fore "rested in part on identification by DNA evidence," and
asserts that "the more sophisticated tests available now . . . of-
fer the potential to result in evidence that is material to [Donald's]
identification as the perpetrator." This information suffices to
demonstrate that the requested testing to be performed on the
underwear, saliva, and hair has the potential to produce a DNA
profile that fails to match, or does match, Donald's DNA profile,
and is therefore material to identifying him as the perpetrator of
the rape. Contrary to the Commonwealth's contention, the weight
of the evidence against Donald is not relevant to a determina-
tion that testing has the potential to produce a result that is
material to his identification as the perpetrator of the offense.
See *Commonwealth* v. *Wade, supra* at 508.

We turn therefore to a consideration whether G. L. c. 278A
permits a moving party access to a more advanced form of a
particular scientific test, such as DNA testing, where an older
version of such a test previously has been conducted. General
Laws c. 278A, § 3 (*b*) (5), requires that a moving party provide
"information demonstrating that the evidence or biological
material has not been subjected to the requested analysis" for
one of five enumerated reasons.[10] Donald's motion cites only

---

[10]General Laws c. 278A, § 3 (*b*) (5), requires that a moving party demon-
strate, by one of five reasons, why the requested analysis has not been performed:

"(i) the requested analysis had not yet been developed at the time of
the conviction;

"(ii) the results of the requested analysis were not admissible in the
courts of the commonwealth at the time of the conviction;

"(iii) the moving party and the moving party's attorney were not aware
of and did not have reason to be aware of the existence of the evidence
or biological material at the time of the underlying case and conviction;

"(iv) the moving party's attorney in the underlying case was aware at
the time of the conviction of the existence of the evidence or biological
material, the results of the requested analysis were admissible as evidence
in courts of the commonwealth, a reasonably effective attorney would
have sought the analysis and either the moving party's attorney failed
to seek the analysis or the judge denied the request; or

"(v) the evidence or biological material was otherwise unavailable at
the time of the conviction."

one of the five enumerated reasons; it purports to provide information demonstrating that "the requested analysis . . . had not yet been developed at the time of the conviction." See G. L. c. 278A, § 3 (*b*) (5) (i). As discussed, although the motion includes sufficient threshold information that the evidence has not been subjected to the requested analysis, it does not provide information demonstrating that the requested analysis had not been developed at the time of Donald's conviction.

1. *Whether evidence previously was subjected to analysis that is different from requested analysis.* In his motion, Donald acknowledges that results from DNA testing of the underwear cutting using the PM plus DQA1 format were presented at trial, and requests that DNA testing now be conducted using the newer Profiler Plus and Cofiler tests. The Commonwealth maintains that the underwear cutting has been subjected to the requested analysis because the Profiler Plus and Cofiler tests are "merely a more refined version" of DNA testing presented at trial. We reject the Commonwealth's contention that a moving party who seeks testing of evidence that previously has been subjected to testing using an older version of the requested technology cannot meet the requirement of G. L. c. 278A, § 3 (*b*) (5).

In order to satisfy the requirement that evidence has not been subjected to the requested analysis, where an older version of the requested testing has been used, a moving party must provide information demonstrating that the requested analysis offers a material improvement over any previously conducted analysis in accurately identifying or excluding the party as the perpetrator of the crime. There are a number of different ways in which a test may have improved materially in accuracy; accordingly, several types of information may suffice to demonstrate that the requested analysis offers a material improvement. A moving party might meet this requirement, for example, by offering information that the requested analysis uses a different technology that is designed to reduce error, or applies a more comprehensive technique, or offers a significant increase in statistical accuracy.[11] Whether a test offers a material improvement in

[11]Statistical evidence about a given test's accuracy is not always necessary. In the context of fingerprint analysis, for example, there is limited statistical

accuracy over a previous test will require a case-specific inquiry, both because of the many ways in which testing may be improved and because of differences in the types of forensic testing and analyses, such as DNA testing or fingerprint analysis, that a moving party may seek.[12]

Donald's motion proffers two pieces of information, each of which, independently, would suffice to provide information demonstrating that the requested analysis offers a material improvement in accuracy over the previously conducted testing. First, the motion references Riley's attached letter stating that testing using Profiler Plus and Cofiler "is more powerful statistically than PM plus DQA1 that was used previously in [Donald's] case" and that "some cases have been reversed on that basis."[13] Second, documents attached to Donald's motion describe the technique used by Profiler Plus and Cofiler and state that they combine the PCR-based method and short tandem repeat (STR) analysis[14] to "generate information for all [thirteen] core STR loci[15] required by the Combined DNA Index System (CODIS) database."[16] According to expert testimony at Donald's trial, the

evidence currently available. See, e.g., *Commonwealth* v. *Joyner*, 467 Mass. 176, 184 & n.11 (2014).

[12]We emphasize that, at this threshold stage, a moving party does not bear the burden of producing evidence sufficient to establish that the requested testing offers a material improvement; that is a matter to be determined at a hearing pursuant to G. L. c. 278A, § 7. At this initial stage, the moving party's burden is only to provide information sufficient to enable the motion judge to form a reasonable conclusion that the motion meets the requirements of G. L. c. 278A, § 3.

[13]Although not included in Donald's motion, we note that a study of the first 194 DNA exonerations in the United States revealed that, in four out of five cases in which DQAlpha testing was performed prior to conviction and the defendant was included as a possible contributor to evidence introduced at trial, the defendants were subsequently excluded by means of more discriminating postconviction DNA testing. See Hampikian, West, & Akselrod, The Genetics of Innocence: Analysis of 194 DNA Exonerations, Annual Rev. Genomics & Hum. Genetics, vol. 12, Sept. 2011, at 97, 107.

[14]See *Commonwealth* v. *Rosier*, 425 Mass. 807, 810-811 (1997) (describing use of short tandem repeat analysis with PCR-based method); *Commonwealth* v. *Vao Sok*, 425 Mass. 787, 790-791 (1997) (describing PCR-based method for DNA testing).

[15]A locus is "[t]he position that a gene or other DNA fragment occupies on the DNA molecule." *Commonwealth* v. *Vao Sok, supra* at 789 n.4.

[16]"CODIS [Combined DNA Index System] is a computer software program

previous testing analyzed only six loci.[17] Whereas the analysis using six loci showed that Donald was among one in 7,800 African Americans whose DNA profile would match that of sperm obtained from the underwear, analysis using thirteen STR loci has the potential to result in random match probabilities on the order of one in several trillion or quadrillion. See, e.g., *Commonwealth* v. *Dixon*, 458 Mass. 446, 450 n.13 (2010) (STR DNA testing on thirteen loci can generate match probability of one in 575 trillion Caucasian Americans); *Commonwealth* v. *Gaynor*, 443 Mass. 245, 248 (2005) (STR DNA testing on thirteen loci generated match probability of one in 64 quadrillion African Americans); *Harvey* v. *Horan*, 285 F.3d 298, 305 n.1 (4th Cir. 2002) (order denying rehearing en banc) (Lutting, J., concurring) (reviewing literature on STR DNA testing using thirteen loci and noting that this type of testing places probability of random match in general order of one in 100 billion to one in 1 quadrillion).

In enacting G. L. c. 278A, the Legislature clearly intended to allow access to more sophisticated forensic and scientific tests than were available at the time of a moving party's trial. The legislative findings that accompanied both the House and Senate versions of the proposed act recognized that the accuracy of forensic testing techniques can improve over time, and that these advancements can play a significant role in correcting wrongful convictions based on older, less sophisticated testing. See 2011 Senate Doc. No. 753; 2011 House Doc. No. 2165 (as forensic and scientific "techniques become more accurate, their use can, in some cases, conclusively establish a person's guilt or innocence"; purpose of G. L. c. 278A "is to remedy the injustice of wrongful convictions of factually innocent persons by allowing access to analyses of biological material with newer forensic and scientific techniques").

---

that operates local, State, and national databases of DNA profiles from convicted offenders, unsolved crime scene evidence, and missing persons . . . . [used to] identify[] suspects by matching DNA profiles from crime scenes with profiles from convicted offenders." *Commonwealth* v. *Mathews*, 450 Mass. 858, 868 n.11 (2008), citing National Institute of Justice, U.S. Dep't of Justice, Using DNA to Solve Cold Cases 9 (July 2002).

[17]While Donald's motion does not state explicitly that the prior tests analyzed only six loci, it references the first § 3 motion, which cites the pages of the trial transcript where the Commonwealth's expert so testified.

In light of this legislative intent, we conclude that a § 3 motion should not be denied on the ground that the evidence sought to be tested has been subjected previously to a method of testing, if the accuracy of that testing has materially improved the test's ability to identify the perpetrator of a crime. To the extent that the judge denied Donald's motion solely on the ground that DNA testing previously had been conducted, the denial was error. For the reasons stated, Donald's motion provides information demonstrating that the testing he seeks using the Profiler Plus and Cofiler format offers a material improvement in accuracy compared to the DNA testing that was previously conducted.

2. *Whether requested analysis had not been developed at time of conviction.* Donald's renewed § 3 motion does not, however, provide information demonstrating why the more advanced testing he requests was not conducted at the time of conviction. The motion states that it meets the requirement of G. L. c. 278A, § 3 (*b*) (5), because the Profiler Plus and Cofiler tests "had not yet been developed at the time of conviction," see G. L. c. 278A, § 3 (*b*) (5) (i), but it provides no information to support that statement.[18] On its face, G. L. c. 278A, § 3 (*b*) (5) (i), does not set forth the type of information that will suffice to demonstrate that the requested analysis was not developed at the time of conviction. The threshold requirement of G. L. c. 278A, § 3 (*b*) (5), might be satisfied in a number of ways. The § 3 motion might, for example, include citations to existing case law, a court order, or a scholarly article, or attach a letter or affidavit from an expert in the field in which the testing is sought, containing the information that the requested analysis was not available at the time of conviction.[19]

---

[18]Although the motion references the letter from Dr. Donald E. Riley stating that the requested testing is more accurate than the testing conducted at trial, the letter contains no information about when the requested testing became available.

[19]The Commonwealth's suggestion that G. L. c. 278A, § 3 (*b*) (5) (i), requires information about when and if the requested analysis has been patented is unavailing. A technique may be in current scientific use without any patent, and a technology may be covered by a patent even though it is not developed or available for use. See *Hartford-Empire Co.* v. *United States*, 323 U.S. 386, 432-433, supplemented by 324 U.S. 570 (1945) (it is settled doctrine that patent may be issued without ever being developed or put to use).

As with all of the requirements in G. L. c. 278A, § 3 (*b*), a party seeking to show that the requested analysis was not developed at the time of conviction bears no burden of establishing that fact by a preponderance of the evidence. Compare G. L. c. 278A, § 3 (*b*), with G. L. c. 278A, § 7 (*b*). In order to survive to the hearing stage, however, a § 3 motion must do more than merely recite the elements of G. L. c. 278A, § 3 (*b*) (5) (i). Donald's motion, which states only that it satisfies the requirements of that section and provides no information to support this bare contention, fails to do so.

*Conclusion.* The order denying the renewed G. L. c. 278A, § 3, motion is affirmed.

*So ordered.*